ALFRED R. L. DOHME, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD C. TRUE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANK C. STARR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 68159, 68501, 69259.   Promulgated November 22, 1934.

*Charles Markell, Esq.,* for the petitioners.
*John D. Foley, Esq., Allin H. Pierce, Esq.,* and *Irving M. Tullar, Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined deficiencies for 1929 as follows:

| | |
|---|---|
| Alfred R. L. Dohme (Docket No. 69259) | $294,826.78 |
| Edward C. True (Docket No. 68501) | 18,215.20 |
| Frank C. Starr (Docket No. 68159) | 412.31 |

The petitioners assign as error the action of the Commissioner in taxing the gain from three exchanges as if there had been but one. They also contend that the value of common stock received by them was $20 instead of $28 as determined by the Commissioner. The latter now contends that he erred in the determination of the deficiencies in treating as a " reorganization " a transaction which was not a " reorganization " within the meaning of that term as used in the Revenue Act of 1928. The above issues are common to all three proceedings and also to a number of other proceedings now on the Board's Reserve Calendar. There is also another issue in the case of Alfred R. L. Dohme of whether the deduction under 23 (n) (2) for contributions is limited to 15 percent of ordinary income exclusive of capital net gain. Stipulations of fact have been filed in each case. Testimony was introduced only for the purpose of proving the value of common stock of the 1929 corporation received by the taxpayers. A summary of the stipulations will suffice for the purpose of this opinion. The reorganization issue will be discussed first.

Sharp & Dohme, Inc., hereinafter referred to as the 1926 corporation, was incorporated in 1926 under the laws of Maryland. Dohme, Mrs. Dohme, Starr, and Mrs. True were stockholders of that corporation. Another corporation of the same name, hereinafter referred to as the 1929 corporation, was incorporated in 1929 under the laws of Maryland in order to bring in new interests and expand the business theretofore conducted by the 1926 corporation. The total outstanding capital stock of the 1926 corporation on August 1, 1929, consisted of 90,000 shares of no par value common stock. A plan was agreed upon in 1929 whereby the 1926 corporation, which had been engaged in manufacturing and selling medicines and drugs, was to " sell or exchange " all of its assets, subject to its liabilities, to the new corporation in such a way that the stockholders of the 1926 corporation would " retain a substantial interest in the business, besides receiving a satisfactory price in cash for the rest of their present interest." The 1926 corporation, after August 1, 1929, distributed to its stockholders 9,000 shares of " special " stock and made its common stock redeemable at $150 per share. It also issued 500 shares of " limited " stock to the 1929 corporation for $1 per share in cash " to continue the existence of the old corporation." The 1929 corporation was to pay to the 1926 corporation as consideration " for the present property and assets " of the 1926 corporation, $13,500,000 in cash and 225,000 shares of the common stock of the 1929 corporation, with one variation which will be mentioned. The stockholders of the 1926 corporation were permitted to exchange one third or less of their common stock of the 1926 corporation directly to the 1929 corporation for a convertible preferred

stock of the 1929 corporation, on the basis of one share of the 1926 common for $2\frac{2}{5}$ shares of the 1929 preferred, and $24,733\frac{11}{12}$ shares of the common stock of the 1926 corporation were thus exchanged for 59,359 shares of the preferred stock of the 1929 corporation. The 1929 corporation was then permitted to surrender to the 1926 corporation the $24,733\frac{11}{12}$ shares of the common stock of the 1926 corporation at $150 per share in lieu of a part of the $13,500,000 cash which it agreed to pay to the 1926 corporation. The 1929 corporation paid the balance of the cash and 225,000 shares of the 1929 common stock to the 1926 corporation. The assets of the 1926 corporation were transferred on or about August 6, 1929, to the 1929 corporation, subject to the liabilities of the 1926 corporation. The 1926 corporation then distributed to the holders of its special stock pro rata the 1929 common stock thus received and redeemed its outstanding common stock at $150 per share. The 1929 corporation authorized and negotiated for the sale to the public of its remaining common and preferred stock so that there would be outstanding 485,000 shares of its common stock and 162,500 shares of its preferred stock. Both classes of stock had voting rights.

The petitioners, Dohme and Starr, and Mrs. Dohme and Mrs. True, received for their stock in the 1926 corporation cash, and common and preferred stock of the 1929 corporation in amounts as set forth in the stipulations. Each exchanged some common stock of the 1926 corporation for preferred stock of the 1929 corporation, each surrendered his special stock of the 1926 corporation for common stock of the 1929 corporation on the basis of one of the former for 25 of the latter, and each surrendered the balance of his common stock of the 1926 corporation for cancellation at $150 per share.

The Commissioner, in determining the deficiencies, held that the gain to each was recognized to the extent of the cash received by each, valued the common stock of the 1929 corporation at $28 per share, valued the preferred stock of the 1929 corporation at $62.50 per share, and computed a profit of the excess of the amount realized in cash and stock of both kinds over the basis to each petitioner of the common stock of the 1926 corporation before the stock dividend.

We find as facts that at the time of the aforesaid transactions the fair market value of the preferred stock of the 1929 corporation received by the taxpayers was $62.50 per share, and the fair market value of the common stock of the 1929 corporation received by the taxpayers was $28 per share.

The important question in these proceedings is whether or not the transaction whereby the 1929 corporation acquired the properties of the 1926 corporation was a " reorganization " within the meaning of that term as defined in section 112 (i) (1) (A) of the Revenue Act

of 1928.[1]  Distributions in liquidation are treated like exchanges. Sec. 115 (c).  The general rule of 112 (a) is that all gain upon the sale or exchange of property shall be recognized.  There are, however, exceptions to this rule.  These petitioners claim that one of the exceptions relieves them of tax at this time on a part of their gain. They say that they exchanged stock in one corporation, a party to a reorganization, in pursuance of the plan of reorganization, for stock in another corporation a party to the reorganization, so that section 112 (b) (3) applies to two of the exchanges.  See also section 112 (c) (1), under which the Commissioner computed their taxable gain. Unless the facts bring them squarely under the exception the general rule will apply.  *Thomas H. Redington*, 25 B. T. A. 707, 711; *Winston Bros. Co.*, 28 B. T. A. 1248, 1252; *Connecticut Power Co.*, 28 B. T. A. 38.  The Commissioner now contends that there was no " reorganization " and hence he erred in not recognizing all of the gain for tax purposes.  The facts relating to this point are not in dispute.

The 1929 corporation acquired all of the properties of the 1926 corporation and the contention of the petitioners is that this meets precisely the definition of a reorganization in section 112 (i) (1) (A), where it provides, " including the acquisition by one corporation of * * * substantially all the properties of another corporation."  The quoted words do not stand alone in the definition, however.  They are in parenthesis after the words " merger or consolidation."  Not every acquisition by one corporation of substantially all of the properties of another constitutes a " reorganization." *Minnesota Tea Co.*, 28 B. T. A. 591; *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309.  A " reorganization " only results where the acquisition is a true merger or consolidation or partakes of the nature of a merger or consolidation.  *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599.  The petitioners agree that the words " merger or consolidation " as generally understood in the law of corporations would not include such a transaction as occurred here.  They concede that there was no merger or consolidation and rely solely upon the words in parenthesis.  They likewise concede that (B) does not apply.  The words in parenthesis in (A) " expand the meaning of ' merger ' or ' consolidation ' so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to

[1] SEC. 112 (i) (1). The term " reorganization " means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation).

delimit but which in strictness cannot be designated as either merger or consolidation." *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, *supra*. The nature of a merger and a consolidation must first be determined in order to apply the test of similarity which the Supreme Court has outlined. The nature of a merger and a consolidation is revealed when the purpose and distinguishing characteristics of these phenomena are considered. The purpose in each case, as the descriptive names indicate, is to merge, consolidate, or combine the business and franchises of two or more corporations into one. The combining into one of what formerly had been separate in two or more, that is, the combining of the businesses and franchises of two or more corporations into one corporation, is one of the most typical and distinguishing characteristics of a merger and a consolidation. The actual combination takes place by operation of law either by merging all of the old group into one of the corporations in the group or by consolidating all of the old group into a new corporation. It is characteristic of a merger and also of a consolidation that only one corporation exists after the merger or consolidation has taken place and this one corporation is greater than any one of the original group, since there is combined in it the properties and franchises of that whole group. A transfer of assets is an essential but not necessarily a distinguishing characteristic of a merger or a consolidation. The court said in *Cortland Specialty Co.* v. *Commissioner*, *supra*, that there must be some continuity of interest on the part of the original stockholders in every statutory "reorganization." Before a merger or a consolidation takes place the stockholders of each separate corporation are interested in the business and assets of their own particular corporation. But when the combination takes place they, in a sense, give up a part of their complete interest in these particular properties for a partial interest in the business and assets of the other corporations entering into the combination, so that instead of a complete interest in a part they now have a part interest in the whole group of properties.

The next step, after having thus briefly outlined some of the characteristics of mergers and consolidations, is to compare what happened in the present case with these distinguishing characteristics to see whether or not the transaction in question was in general like a merger or consolidation so that it may fairly be said to partake of their nature. Most of the assets of the old corporation were transferred to a new corporation. The transfer was not made in order to combine the business and franchises of two corporations, but was made in order to allow the original stockholders to take out a portion of their investment in cash and to prepare to let in new interests sufficient to expand the single business involved. The trans-

action, to the extent at least of the cash involved, partook of the nature of a sale. But, a more important circumstance is that there was no combination. Prior to the transfer there was no group of separate corporations having separate businesses and separate assets which could have been combined. Before anything was done there was but one corporation and but one business. Neither the franchise nor the business of this corporation was combined with the franchise or business of any other corporation. Just at the time of the transfer, and for the purpose before mentioned, a new corporation was organized, but this new corporation had no business of its own which could be combined with that of any other corporation. It simply acquired the business of the old corporation. It had a franchise separate from that of the old corporation, but even this was not combined with that of the old corporation. Both corporations continued to exist after the transfer, each with its own franchise separate from that of the other, and the retention by the old corporation of its franchise was an integral part of the plan. There was some continuity of interest, that is, the stockholders of the old corporation did not lose all interest in the properties transferred. The petitioners argue that the extent or degree of interest retained is immaterial because the scheme of the statute is to tax the gain to the extent of the cash, or property other than stock of the new company, received. See contra, *Warner Co.*, 26 B. T. A. 1225. But in this case even the interest of stockholders after the transfer is not like the corresponding interest in the case of a consolidation or merger. These stockholders of the old corporation gave up a part of the complete interest which they had had in the business and assets of the old corporation. But they did not give it for a partial interest in the combined assets of a new corporation, including assets and businesses of other combining corporations; instead, they gave it up for cash and for a fractional interest in the same assets and the same business which had formerly belonged to their old corporation. The new corporation was to acquire additional cash through the issuance of its stock to new stockholders, but this fact would not help to develop a resemblance between this transaction and a merger or a consolidation. Thus it appears that this transaction was not in general like a merger or consolidation. Although it had some features which a merger or a consolidation might also have, still it had " no real semblance to a merger or consolidation " and did not sufficiently " partake of the nature of a merger or consolidation " to bring it within the statutory definition of a reorganization. *Pinellas Ice & Cold Storage Co.*, supra.

It does not matter whether or not the transaction in question would have been a reorganization within the generally understood meaning

of that term. *Von Weise* v. *Commissioner*, 69 Fed. (2d) 439; certiorari denied, 292 U. S. 655. Such a meaning of the term has no significance here, for the statute defines "reorganization" and the transaction was not a "reorganization" under section 112 (i) (1) (A). The general provisions of Congress in enacting the reorganization and nonrecognition provisions of the statute have not been overlooked in the decision of this case, but a discussion of those purposes would not prove beneficial and is not necessary, since in any event this case does not come within any of the exceptions to the general rule of section 112 (a).

The Commissioner has determined that the value of the common stock of the 1929 corporation received by these petitioners, or their wives or both, was $28 per share at the time of receipt. No opinion evidence of the value of the stock was offered. The Commissioner relies upon the presumption of correctness which attaches to his determination and upon the prices at which the stock was actually sold on various exchanges. These sales indicate a value of $28 per share for the stock, as determined by the Commissioner. The petitioners have not argued this point. Apparently they rely upon some or all of the following facts: Offers of $200 per share for the common stock of the 1926 corporation were rejected; 260,000 shares of the common stock of the 1929 corporation were sold to the underwriting bankers for $4,200,000; there are statements in resolutions that the stock was worth $20 per share; and an understanding existed between the recipients of 40,000 shares of the common stock of the 1929 corporation and the bankers that the 40,000 shares would be withheld from the market for a time. The rejected offer is of little, if any, significance. The details of the withholding agreement have not been shown and the evidence as to that agreement does not show that it affected the value of the stock, particularly the value of the shares here in question. The statements in resolutions are not very helpful when considered in connection with their context and the absence from the witness stand of those responsible for the statements. The most important fact in the record, from the petitioners' standpoint, is the sale to the bankers. But even that piece of evidence when added to all other evidence in favor of the low value of $20 is insufficient to cause a preponderance in favor of the low value. The bankers were supplying services and were being compensated for services so that the stated sale price to them is not a reliable criterion of the value of the stock. There is no reason, on the other hand, to discount the sales which actually took place on exchanges. Prices were uniform over a considerable period during which sales in considerable quantities were made. The evidence does not justify a reversal of the Commissioner's determination.

Decision of the question of how many exchanges took place for tax purposes may be immaterial in view of the decision that there was no statutory reorganization. However, the evidence establishes that there were actually three real exchanges and each had its usual and separate effect for tax purposes. See *Evelyn F. Gregory*, 27 B. T. A. 223, and *Commissioner* v. *Gregory*, 69 Fed. (2d) 809, reversing the Board's decision on other grounds.

The stipulated facts in the case of Alfred R. L. Dohme on the point relating to the elimination of capital net gain from the computation of the 15 percent limitation on the deduction for contributions brings this case squarely within the decision of a similar point in *Aaron Straus*, 27 B. T. A. 1116. The Commissioner erred in eliminating capital net gain from the computation. See also *Bliss* v. *Commissioner*, 68 Fed. (2d) 890.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

SMITH, dissenting: In the Revenue Act of 1918 (section 202 (b)), and in each subsequent revenue act, Congress has provided that certain profits arising from the exchange of property upon the reorganization, merger, or consolidation of corporations shall not be taxed until there has been a sale or other disposition by the taxpayer of the property received in exchange. The purpose of these statutory provisions was to facilitate corporate reorganizations, or rather not to discourage and block necessary business readjustments by taxing mere paper gains before such gains are realized in money. See Federal Income Tax: Definition of " Reorganization," 45 Harvard Law Review 648, note 1, quoting S. Rept. 275, 67th Cong., 1st sess., pp. 11, 12.

In the drafting of the reorganization provisions of the statutes Congress had the active cooperation and assistance of the Treasury Department and, in fact, those of the later acts, highly technical in character, were the handiwork of direct representatives of the Treasury Department. Great weight must therefore be given to the interpretation placed upon them by the respondent. His application of them to situations which have arisen has been given wide publicity in Treasury publications. See " Reorganization and Other Exchanges in Federal Income Taxation ", by Robert N. Miller, et al., for an analysis of such rulings. In I. T. 2392, Cumulative Bulletin VI-2, p. 17, a form of reorganization substantially the same as that involved in the instant proceeding was held to be a " reorganization " within the meaning of the statute. Relying upon such interpretations, many reorganizations have been effected in past years. One of these was the Sharp & Dohme transaction in 1929. The

respondent held that the transaction amounted to a reorganization within the meaning of the statute and the deficiencies herein involved have been determined on that view. He never raised any question as to the correctness of his determination until June 7, 1933, when he filed amended answers in these proceedings asking increased deficiencies on the ground that he had erred in holding that there had been a reorganization of the 1926 corporation in 1929.

Without regard to the history of the legislation or to the interpretation which has been placed upon it by the respondent in past years, I am of the opinion that there are no decisions of the courts that warrant the respondent's claim that the 1926 corporation " sold its assets " to the 1929 corporation in such a way that in 1929 there was no reorganization of the 1926 corporation. In *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599 (cited with approval in *Pinellas Ice & Coal Storage Co.* v. *Commissioner*, 287 U. S. 462), it was stated:

* * * In defining "reorganization," section 203 of the Revenue Act [of 1926] gives the widest room for all kinds of changes in corporate structure, but does not abandon the primary requisite that there must be some continunity of interest on the part of the transferor corporation or its stockholders in order to secure exemption. Reorganization presupposes continuance of business under modified corporate forms.

The definition of " reorganization " referred to in the above cited decision (section 203 (h) (1) of the Revenue Act of 1926) is identical with that contained in section 112 (i) (1) of the Revenue Act of 1928.

The facts in these proceedings show that the stockholders of the 1926 corporation received 46.87 percent (225,000 out of 485,000 shares) of the issued common stock and 36.53 percent (59,359 out of 162,500 shares) of the issued preference stock of the 1929 corporation. There was, therefore, a continuity of interest in the stockholders of the 1926 corporation in the 1929 corporation.

In the opinion of the Board in these proceedings it is stated " that there was no combination of the two corporations "; that therefore there was " no real semblance to a merger or consolidation." The evidence shows, however, that the 1929 corporation was incorporated on July 17, 1929; that a large part of its stock was issued to bankers for cash; and that with this cash and additional shares it acquired all the assets of the 1926 corportion. From this it appears that there were two corporations existing side by side for a short period and that the 1929 corporation took over all the assets and business of the 1926 corporation. For some unexplained reason the 1929 corporation did not see fit at once to dissolve the 1926 corporation. It was continued as a mere shell of a corporation, its only assets consisting of its franchise and $500 in cash paid into its treasury by the 1929

corporation in exchange for all its capital stock. If substance and not form is to control in a situation of this character, I am of the opinion that the continued existence of the 1926 corporation is without significance.

In *Pinellas Ice & Cold Storage Co.* v. *Commissioner, supra,* it was definitely held that the parenthetical clause included in the definition of a reorganization expands:

* * * the meaning of·"merger" or "consolidation" so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation. * * *

I think that this expanded definition of the phrase "merger or consolidation" covers the transaction before us. It was so considered by the respondent until June 7, 1933. I do not think that there are any decisions of the courts that warrant a different view.

BLACK, ARUNDELL, MATTHEWS, LEECH, and ADAMS agree with this dissent.