**FIRST SEATTLE DEXTER HORTON NAT. BANK et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 7326.

Circuit Court of Appeals, Ninth Circuit.
April 22, 1935.

James H. Kane, of Seattle, Wash., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and S. Dee Hanson, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This petition for review involves an alleged deficiency in income tax against petitioners in the amount of $5,779.69 for the calendar year of 1926. There is no conflict in the testimony or other evidence in the case. Most of the facts are covered by stipulation. The material facts are as follows:

Some time prior to February 15, 1926, George Boole died testate, and the petitioners were appointed and now are the executors of his estate. Prior to the death of the testator there were two corporations each having the name A. M. Castle & Co. One was located in Chicago, and is hereinafter called the Chicago corporation; the other was located in Seattle, and is hereinafter called the Seattle corporation. At the time of his death, testator owned 2,913 shares of the preferred stock of the Seattle corporation.

As a part of the reorganization of the Chicago corporation, a written agreement was entered into on February 15, 1926, between petitioners, as executors and trustees under the will of George Boole, deceased, parties of the first part, and the said Chicago corporation, as party of the second part, under the terms of which the Seattle corporation merged and consolidated itself and its assets with the Chicago corporation. Pursuant to said agreement, petitioners sold and delivered to the Chicago corporation the stock hereinbefore referred to in the Seattle corporation, belonging to the estate of George Boole, deceased, and received in exchange therefor certain shares of stock and cash of the Chicago corporation.

The paragraphs of the agreement pertinent to the sale in question are as follows:

(1) "The parties of the first part (the executors) agree to convey, sell and assign to the party of the second part (A. M. Castle & Co. of Chicago) and the party of the second part agrees to buy, 2,913 shares of the preferred stock of A. M. Castle and Company of Washington, for $90.00 per share, subject, however, to all the other terms of this agreement."

(2) "Immediately upon the consummation of the sale provided for in paragraph one hereof, the parties of the first part agree to accept in payment of said 2,913 shares of the preferred stock of A. M. Castle and Company of Washington at $90.00 per share, 2,621 shares of preferred stock in the party of the second part of the par value of $100.00 per share, * * * and the sum of $70.00 in cash."

(5) "As one of the conditions precedent to the sale and exchange of stock provided for hereunder, the party of the second part shall cause David B. Gann of Chicago, Illinois, attorney for the party of the second part, or someone in his behalf, to purchase from the parties of the first part for cash at par, together with accrued dividends thereon, $50,000.00 of the par value of the preferred stock in A. M. Castle and Company of Chicago sold to the said parties of the first part under Paragraph 2 hereof, said purchase to be simultaneous with the sale and exchange provided hereunder."

This agreement was carried out, the stock delivered, and the cash paid.

The only controversy in this proceeding is whether or not a taxable gain resulted from the above-described transaction. The Commissioner found that there was a net taxable gain of $50,070, composed of $50,-000 received from the sale of 500 shares of the preferred stock of A. M. Castle & Co. of Chicago for $50,000, and $70 cash received upon the exchange of said stocks, whereas petitioners deny that there was any taxable gain. The determination of the Commissioner of Internal Revenue was sustained by the Board of Tax Appeals in a decision entered April 27, 1933, which decision petitioners now bring before this court for review.

The Commissioner of Internal Revenue determined a profit on the transaction here in question only to the extent of and measured by the total amount of cash actually received by petitioners; namely, $50,070. He used as a basis therefor the value of the stock of the Seattle corporation as appraised for federal estate tax purposes, and the par value of the stock of the Chicago corporation ($100), and asserted a deficiency accordingly.

In their assignments of error petitioners contend: First, that the contract of February 15, 1926, was divisible to the extent that the exchange of the preferred stock of the Seattle corporation for the preferred stock of the Chicago corporation was a distinct and separable transaction from the sale of the 500 shares of stock of the Chicago corporation for $50,000 referred to in paragraph 5 of the agreement hereinbefore set forth, and that the Board erred in not so finding; second, error is predicated on the act of the Board in affirming the Commissioner's determination that the preferred stock of the Chicago corporation had a fair market value at the time of the sale of at least $100 per share, it being the contention of petitioners that such stock at the time in question was without any "fair market value," and therefore no gain or loss was realized.

As to their first assignment of error petitioners maintain that under section 203 (b) (2) of the Revenue Act of 1926, 44 Stat. 9, 26 USCA § 934 (b) (2), no gain should be recognized in such an exchange of stock for stock pursuant to a plan of reorganization. Such conclusion is made dependent upon the premise that the said sale of the 500 shares of stock of the Chicago corporation was a separable transaction from the exchange of the preferred stocks of the two corporations, and that in this respect the terms of the contract were divisible. That portion of the act above referred to, and upon which petitioners rely as being controlling in the circumstances, is as follows: "(b) (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

On behalf of the government it is claimed that the transaction is governed by section 203 (d) (1) of the same act (26 USCA § 934 (d) (1), which reads: "(d) (1) If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

It appears, therefore, that if, as contended by the Commissioner, the contract here in question is not susceptible of division so as to come within secton 203 (b) (2) and amounts merely to an exchange of stock for stock, it must necessarily fall within the provisions of section 203 (d) (1), in which case the Commissioner's determination of tax deficiency must be sustained, unless he erred in his finding relative to the market value of the said stock.

In passing upon the question of whether or not the contract is severable or entire, it is fundamental that the intention of the parties should be looked to, and that the contract should be construed so as to

effectuate such intention so far as the bounds of reason and justice permit. Obviously, courts cannot possibly know or judge what the parties may have intended to accomplish but failed to expressly provide for, and therefore such intention must be ascertained by a fair construction of the terms of the contract itself. So where parties enter into a written agreement which embodies and sets forth in full all the terms and conditions of the contract, their intentions must necessarily be determined from and governed by the language they have employed in such writing, and from the subject matter of the agreement. To do otherwise would be to frustrate the very end for which people contract in writing.

■ Thus upon an examination of the contract here in question we find that under the specific and unambiguous terms thereof, as set forth in paragraph 5, it is provided that, "as one of the conditions precedent to the sale and exchange of stock provided for hereunder," the purchase of the said 500 shares for $50,000 was "to be simultaneous with the sale and exchange provided hereunder." Such language would seem to clearly evince that it was the intention of petitioners that, unless they received the said $50,000 in cash in addition to 2,121 shares of the Chicago corporation's stock, they would not go through with and consummate the deal. Moreover, that the obtaining of the $50,000 in cash was the motivating cause and primary purpose of petitioner's entrance into the entire transaction is evidenced by the testimony of petitioner's attorney, James H. Kane. This witness, called by petitioners, testified in part, as follows: " * * * We insisted upon the provision which is in the contract, that after we got the stock of A. M. Castle & Company of Chicago they would furnish a buyer for it, or buy it themselves, at least 500 shares of the stock at par, in order to give us some assurance that we could settle up the estate and get money that we then needed. The estate needed money as there were many obligations to take care of. * * *"

It appears from the stipulation of facts heretofore referred to that the Chicago corporation accordingly agreed to and did purchase the said 500 shares of their stock for the agreed price. All of the provisions to that end were carried out at the same time. The net result at the conclusion of the transaction was that the petitioners held 2,121 shares of the Chicago corporation's stock plus $50,070 in cash, while the Chicago corporation obtained in return therefor 2,913 shares of the stock in the Seattle corporation. It is also to be noted that it is conceded by petitioners in their brief that the sale of the 500 shares of stock was concluded as a part of the same transaction.

■ The general rule of interpretation to be applied in deciding whether or not a given contract is severable or entire is well stated in 13 C. J. 561, § 525, as follows: "As a general rule it may be said that a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and the consideration shall be common to the other and interdependent."

To the same effect, holding that primarily the question whether a contract is entire or severable is one of intention, see Los Angeles Gas, etc., Co. v. Amalgamated Oil Co., 156 Cal. 776, 106 P. 55. See also Commissioner v. R. J. Darnell, Inc. (C. C. A.) 60 F.(2d) 82; In re Hellams (D. C.) 223 F. 460.

Therefore, taking into consideration the circumstances and evidence as they appear from the record, in the light of the above authorities, we cannot but conclude that the sale and exchange here in question constituted, in effect, one composite transaction designed to effect a single purpose.

[5] With reference to petitioner's first assignment of error, the government further contends that, regardless of whether or not the contract in question is divisible, as argued by petitioners, the section of the Revenue Act of 1926 upon which they rely (section 203 (b) (2), supra, has no application to the situation in the case at bar. In this connection the following statement appears in the opinion of the Board of Tax Appeals: " * * * This contention (petitioner's), however, overlooks the fact that this section of the law (section 203 (b) (2) provides that no gain shall be recognized 'if the stock or securities * * * are * * * exchanged solely for stock or securities', and that in this case in addition to stock the Chicago corporation also paid to petitioners cash of $70 at the least, which is sufficient to take the transaction out of the statute relied on. In any event, therefore, it appears that the transaction is governed by section 203 (d) (1) of said act. * * *"

While the government in its brief has not referred us to any judicial interpretations of this section of the act in accord with their contention, nor does it appear

that there are any such cases directly in point, we believe that the clarity of the language employed in said section limits its application to cases involving reorganization of corporations wherein the stock of one is exchanged solely for the stock of another. Since admittedly petitioners exchanged the stock of the Seattle corporation for that of the Chicago corporation and $70 in cash, the decision of the Board of Tax Appeals in this respect must be sustained. However, having already construed the contract in question as being entire rather than divisible, and thereby bringing it within the provisions of section 203 (d) (1), this point is not necessarily determinative of the issues herein presented, and need not be pursued in view of our disposition to treat the transaction as an entire one.

Moreover, in view of the principle that, in applying income tax laws, the substance, and not the form, of the transaction should control, the exchange and sale of stock which was required under the whole contract herein should be treated as a single, composite transaction for income tax purposes, regardless of the formalities followed. See S. A. MacQueen Co. v. Com'r, 67 F.(2d) 857, 858 (C. C. A. 3); Tulsa Tribune Co. v. Com'r, 58 F.(2d) 937, 940 (C. C. A. 10); Western Maryland Ry. Co. v. Com'r, 33 F.(2d) 695 (C. C. A. 4); United States v. Phellis, 257 U. S. 156, 158, 42 S. Ct. 63, 66 L. Ed. 180; Weiss v. Stearn, 265 U. S. 242, 254, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520. In dealing with a situation not unlike the one at bar, the court, in the case of West Texas Refining Co. v. Com'r, 68 F.(2d) 77, 80 (C. C. A. 10), quoting from Prairie Oil & Gas Co. v. Motter, 66 F.(2d) 309, 311 (C. C. A. 10), said: "If a taxpayer sought to avoid a tax on the profits of such a sale as this by asking the Commissioner to ignore the actualities, he would shortly and properly be reminded that taxation is an intensely practical matter and that the substance of the thing done, and not the form it took, must govern."

As we have already stated, as we see it what petitioners actually did was, in effect, to exchange 2,913 shares of stock in the Seattle corporation for 2,121 shares, net, of the Chicago corporation, and $50,070 in cash. Regardless of the interpretation or construction which petitioners seek to place upon their contract, in cases such as this matters of form should be disregarded for those of substance.

Having determined that section 203 (d) (1) of the Revenue Act of 1926 is controlling in the situation at bar, it now becomes necessary to examine its provisions in order to ascertain to what extent the property herein involved is taxable. The section provides that, in an exchange of property for other property or money, the gain, if any, to the recipient shall be recognized in an amount not exceeding the sum of such money and the fair market value of such other property. We shall proceed, therefore, to determine whether or not the Commissioner and the Board correctly valuated the property entering into the transaction. As heretofore stated, the determination of the Commissioner which was sustained by the Board was that the fair market value of the Chicago corporation's preferred stock was not less than $100 per share at the time of the sale in question. By their second assignment of error petitioners attack such finding as being erroneous; their contention being that said stock was wholly without any fair market value, and consequently no gain or loss could be realized from the transaction.

The record discloses that under the terms of the contract of February 15, 1926, it was provided in the form of a condition precedent that the Chicago corporation was to call in, redeem, or purchase all of the stock of a certain $250,000 issue which was at the time outstanding. After providing for the retirement of this old stock, the contract further provided for the issuance by the said Chicago corporation of a new preferred stock, such issue not to exceed $1,000,000, and to be the only preferred stock outstanding. The parties also agreed that, when this new stock was issued, it was to be sold for cash only and for not less than par ($100); that the said stock "shall be cumulative and the dividend rate shall be seven per cent per annum payable semiannually, and that the said stock shall be preferred as to dividends and assets in case of dissolution." The stock which petitioners received from the Chicago corporation in exchange for their stock in the Seattle corporation, as well as the 500 shares in question which the Chicago corporation bought back, was stock of this so-called new issue.

The Chicago corporation guaranteed that the dividends should be promptly paid in cash, when due, and in addition agreed "to redeem or purchase at par and accrued dividends" all preferred stock distributable

to Helen King Boole, petitioner and legatee under the will of her deceased husband, George Boole, "on or before three (3) years after the execution of this agreement"; it being provided, however, that said stock was not to exceed an amount in excess of five-sixteenths of the remaining stock held by the executors, petitioners herein. There being 2,121 shares of said stock remaining after the sale of the 500 shares for $50,-000, the said five-sixteenths which might be allotted to the widow under the terms of the said contract would amount to approximately 662 shares, and these the Chicago corporation agreed to purchase at par ($100). Adding to this figure the 500 shares agreed to be bought back under the terms of paragraph 5 of the said agreement, there were 1,162 shares contracted for before the stock was issued.

█ It further appears from the record that during the course of the hearing the attorney for the petitioners stated that about $680,000 of this million dollar stock issue was issued after the reorganization. Petitioners introduced no evidence to show at what price this stock was sold. In the absence of any such evidence, as to the matter of the "fair market value" of this stock, the Board was warranted in assuming, as it did, that said stock was sold at par in pursuance of the terms of the agreement heretofore referred to.

Thus, having 1,162 shares contracted for before the reorganization and about 6,800 shares which were sold thereafter, it appears that over three-fourths of the whole authorized issue of $1,000,000 were sold at a price as great as par ($100).

██ The question of the value of the preferred stock here in controversy is one of fact, and the Board's decision affirming the Commissioner's determination, when supported by any substantial evidence, in the absence of a showing of clear and unmistakable error, is conclusive upon appeal. " * * * This is but another way of saying that the decision of the taxing board must prevail if it is not contrary to the 'indisputable character of the evidence' or if the evidence is 'legally sufficient to sustain' such finding. The evidence is legally sufficient to sustain the finding if there be substantial evidence to support it, and the record as a whole does not clearly, convincingly, or even possibly, 'indisputably' require a contrary conclusion. * * * " Tracy v. Commissioner, 53 F.(2d) 575, 579 (C. C. A. 6), and cases, cited; Phillips v.

Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; Crowell v. Commissioner, 62 F.(2d) 51 (C. C. A. 6); Williams v. Commissioner, 45 F.(2d) 61 (C. C. A. 5); Old Mission P. Cement Co. v. Commissioner, 69 F.(2d) 676 (C. C. A. 9); Emerald Oil Co. v. Commissioner, 72 F.(2d) 681 (C. C. A. 10).

After reviewing the record in this case, we conclude that there was ample substantial evidence to warrant the Board in affirming the finding of the Commissioner that the fair market value of the stock in question was at least $100 per share.

Affirmed.