# STARR v. COMMISSIONER OF INTERNAL REVENUE. *

## TRUE et ux. v. SAME.

## DOHME v. SAME.

### Nos. 3931–3933.

Circuit Court of Appeals, Fourth Circuit.

April 6, 1936.

*Writ of certiorari denied 56 S. Ct. 948, 80 L. Ed. —.

Charles Markell, of Baltimore, Md., for petitioners.

John MacC. Hudson, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

In the year 1929 the officers of Sharp & Dohme, a Maryland corporation which had been incorporated in 1926, decided on and carried out a plan of reorganization the general purpose of which was to sell to the outside public a large interest in the business and decrease the relative holdings in the company of the persons who held at that time its total capital of 90,000 shares of non-par value common stock. They caused to be formed, pursuant to this plan, a new corporation of the same name, which agreed to take over the assets and assume the liabilities of the old corporation and to pay to that corporation the sum of $13,-500,000 and issue to it 225,000 shares of non-par value common stock. This amounted to the new corporation's giving to the old the sum of $150 in money and 2½ shares of its common stock for each of the shares of the outstanding common stock of the old corporation. The old corporation, under the plan of reorganization, was thereupon to redeem its common stock at $150 per share and to distribute among its stockholders the common stock received from the new corporation. This distribution of the common stock of the new corporation was to be accomplished, however, not by simple distribution, but by having the old corporation issue 9,000 shares of "special" stock as a stock dividend to its stockholders, who were thereupon to exchange with the old corporation the "special" stock thus received for common stock in the new corporation which the old corporation was to receive; 500 shares of "limited" stock at $1 per share were issued by the old corporation to the

new to be held by the latter for the purpose of keeping the old corporation alive after its other stock should have been redeemed.

Money was being raised by the new corporation by the sale of its "preference" stock at $62.50 per share; and, under the plan of reorganization, an option was given the stockholders of the old corporation to exchange not exceeding one-third of their holdings of common stock in that corporation for this preference stock at the rate of one share of common for 2⅖ preference. The common stock thus acquired by the new corporation was to be used in lieu of cash at $150 per share in its settlement with the old corporation; and it appears that 59,359 shares of the new corporation's "preference" stock were exchanged for common stock of the old corporation under this option.

This plan of reorganization was carried out, and the taxpayers who are petitioners here availed themselves of the option accorded them to exchange shares of common stock in the old corporation for preference shares in the new. In working out their rights under the plan they made the following transfers of stock, viz.: (1) On August 6, 1929, they exchanged common stock of the old corporation for preference stock of the new, this exchange being made with the new corporation; (2) on the same date, August 6, 1929, they transferred the remainder of their common stock in the old corporation to that corporation for cash; and (3) on August 13, 1929, they exchanged their special stock in the old corporation for common stock in the new.

The Commissioner held that the transfers were made pursuant to a plan of corporate reorganization, but treated all three of them as constituting one transaction and imposed the tax on the entire profit derived therefrom, limited, however, to the amount of cash received. The taxpayers appealed to the Board of Tax Appeals, contending that the three transfers constituted three separate and distinct transactions, in two of which stock was exchanged for stock and no profit was realized, and that only with respect to the transfer of stock for cash was there realized a profit which was taxable. The Board found that "there were actually three real exchanges and each had its usual and separate effect for tax purposes," but held that there was no reorganization within

the meaning of the statute and that the entire profit derived from the transfers should be taxed without limitation to the amount of cash received. Dohme v. Commissioner, 31 B.T.A. 671. Taxpayers have petitioned for a review of this holding.

Counsel for the Commissioner, without formally confessing error, virtually concede that the Board was in error in holding that the transfers were not made pursuant to a plan of corporate reorganization within the meaning of the statute applicable. This is unquestionably correct. The case is one where "substantially all the properties" of one corporation were acquired by another, where the seller acquired "a definite and substantial interest in the affairs of the purchasing corporation" which represented a "substantial part of the value of the thing transferred," and where what was done was not a mere sale but genuinely partook "of the nature of merger or consolidation." In the light of recent decisions of the Supreme Court, there can be no doubt but that the facts present a clear case of reorganization within the meaning of section 112(i)(1) of the Revenue Act of 1928, 45 Stat. 816, 818. Helvering v. Minnesota Tea Co., 56 S.Ct. 269, 80 L.Ed. ——; John A. Nelson Co. v. Helvering, 56 S.Ct. 273, 80 L.Ed. ——; Helvering v. Watts, 56 S.Ct. 275, 80 L.Ed. ——; G. & K. Mfg. Co. v. Helvering, 56 S.Ct. 276, 80 L.Ed. ——.

Counsel for the Commissioner contend, however, that, in reversing the Board on the question of reorganization, we should sustain the Commissioner's contention that there was in effect only one transfer, and that, under section 112(c)(1) of the act (45 Stat. 816, 817), taxpayers should be taxed on the entire profit derived from the reorganization, limited, however, to the amount of cash received in the transaction. Taxpayers contend that the question as to whether there were three transfers or only one is not properly before us, that, if it is before us, we are concluded by the finding of the Board with respect thereto, and that, in any event, the record conclusively shows that there were three separate transfers.

We cannot agree that the question as to whether there were three transfers or only one is not before us. There is no dispute as to the facts. Upon these the Board has held that there were three transfers and no reorganization. The petition of taxpayers, alleges that there was error

in holding that the transfers were not made pursuant to a plan of corporate reorganization; but, to determine whether this was error or not, we must examine into the nature of the transfers. If, in doing so, we reach the conclusion that the three transfers, as a matter of law, were but parts of one transaction and were taxable as such, it is our duty to call attention to that error in the decision of the Board as well as to the error in holding that the facts shown did not constitute a corporate reorganization within the meaning of the statute, to the end that, when the case is remanded to the Board, taxes may be assessed by it upon the proper basis. We do not understand that where, upon the petition of taxpayers, we correct an error against them, we are without power to correct another error affecting the same matter, merely because they have not assigned error with respect thereto. On the contrary, we conceive it to be our duty to point out the correct rule of law applicable in the premises, so that the taxes due may be properly assessed. In this connection, it appears to us that it would be most unfortunate, if, when the courts are clearing themselves of the reproach of hypertechnicality in their own procedure, they should permit the same evil to creep into the procedure provided for reviewing decisions of administrative tribunals.

■ So far as the finding by the Board is concerned, the facts are admitted and the finding is not a finding of fact at all but a mere conclusion which the facts do not support. It is perfectly clear that the three transfers were but steps in the carrying out of one general plan, all of the details of which were agreed upon before any of the transfers were made. The substance of that plan, stripped of irrelevant detail, was that, for each share of stock in the old corporation, the stockholder should have 2½ shares of common stock in the new and $150 in cash, with the option on his part to take preference stock in the new corporation at $62.50 per share in lieu of one-third of the cash to which he would otherwise be entitled. The record shows that, by action of the stockholders in approving the plan and indicating their election under the option offered them, every detail of the three transfers was arranged before any of them took place; and one contract, executed four days after the stockholders' meeting, bound the new corporation to exchange preference stock for common stock as provided in the option, as well as to pay cash and issue common stock to the old corporation in exchange for its assets. It did not destroy the unity of what was done that the old corporation first issued the "special" stock and then exchanged the common stock of the new corporation for it, nor that the old stockholders were given the option of taking "preference" stock in lieu of one-third of the cash to which they were entitled. Before any exchange was made, the old corporation was bound to exchange common stock of the new for its "special" stock; the new corporation was bound to exchange its "preference" stock for common stock of the old, in an amount which had been fixed by prior acceptance of the option; the old corporation was bound to redeem its common stock whether tendered by its stockholders or by the new corporation; and the common stock was called for redemption. The various transactions contemplated by the plan were interdependent, and the carrying out of the plan as a whole was the real consideration for each of the transfers.

■ The statute applicable is section 112(c) (1) of the Revenue Act of 1928, 45 Stat. 816, 817, which is as follows: "(1) If an exchange would be within the provisions of subsection (b)(1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

The evident purpose of this statute is that, in case of reorganization and other somewhat similar transactions covered by the statute, profits realized in cash or other property shall be taxed as is other income, but that mere paper profits shall not be taxed. To the extent that stock is retained in the new corporation, the stockholder is carrying along his original investment; but, to the extent that he realizes money or other property upon the reorganization, he is withdrawing that from the enterprise. If the stock in the new corporation is worth as much as or more than the cost to him of the stock in the old, he is merely withdrawing his profit from the

enterprise when he receives money or property upon the reorganization. In such case the reorganization enables the stockholder to realize in cash the increase in value of his stock; and Congress evidently thought it just that he account for same as income, just as he would account for dividends received on his stock.

Where transfers are made pursuant to such a plan of reorganization, they are ordinarily parts of one transaction and should be so treated in application of the well-settled principle that, in applying income tax laws, the substance, and not the form, of the transaction shall control. First Seattle D. H. Nat. Bank v. Commissioner (C.C.A.9th) 77 F.(2d) 45; Prairie Oil & Gas Co. v. Motter (C.C.A.10th) 66 F.(2d) 309; Howard v. Commissioner (C.C.A.6th) 56 F.(2d) 781; American Security & Trust Co. v. Tait (D.C.) 5 F. Supp. 337. This is demanded also by the principle, equally well settled, that a single transaction may not be broken up into various elements to avoid a tax. Ahles Realty Corporation v. Commissioner (C.C.A.2d) 71 F.(2d) 150, 151; West Texas Refining & Development Co. v. Commissioner (C.C.A.10th) 68 F.(2d) 77, 79, 80; Prairie Oil & Gas Co. v. Motter, supra (C.C.A.10th) 66 F.(2d) 309, 311; Tulsa Tribune Co. v. Commissioner (C.C.A.10th) 58 F.(2d) 937.

Taxpayers rely upon the decision of the Supreme Court in General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. ——. In that case, however, no corporate reorganization was involved, and there was no unifying contract such as we have here. Shares of stock were distributed by way of dividend among the corporation's stockholders and were sold by the stockholders, who were not bound to sell, to a purchaser who had made an offer to the corporation; and the decision was that these facts did not warrant a holding that the sale was made by the corporation so as to justify the imposition of a tax against it on the theory that it had made the sale and realized a profit. As pointed out by the Circuit Court of Appeals of the Second Circuit in Chisholm v. Commissioner, 79 F.(2d) 14, 16, a different case would have been presented if the distributors of the stock had been bound to make sale at the price offered to the corporation.

Taxpayers rely also upon Bruce v. Helvering, 64 App.D.C. 192, 76 F.(2d) 442.

In that case, however, the taxpayer had agreed to sell 200 shares of stock for cash before learning of a contemplated reorganization. Later she learned of the reorganization and exchanged 500 shares of stock in the old corporation for 1,200 shares in the new. The two transactions were separate and distinct and made pursuant to independent contracts. The court was at pains to point out, however, that, if the sale of the 200 shares had been conditioned on the exchange of the 500 shares for stock, the case would have come directly under the provisions of section 112 (c) (1) of the statute. On like principle, Helvering v. Ward (C.C.A.8th) 79 F.(2d) 381, and Lonsdale v. Commissioner (C.C.A.8th) 32 F.(2d) 537, may be distinguished.

The only authority cited by the board for its action was its own decision in Gregory v. Commissioner, Helvering, 27 B.T.A. 223, but, in view of the decision of the Supreme Court in the same case, Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355, it would appear that the Board erred there in paying too much attention to the mere form of transactions entered into for the purpose of escaping taxes. The court said of the corporation organized and used there as the basis of the plea of corporate reorganization: "Putting aside, then, the question of motive in respect of taxation altogether, and fixing the character of the proceeding by what actually occurred, what do we find? Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. No doubt, a new and valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. It was brought into existence for no other purpose; it performed, as it was intended from the beginning it should perform, no other function. When that limited function had been exercised, it immediately was put to death." The same thing in almost the same words might be said of the device of issuing the "special" stock of the old corporation and exchanging for it the common stock of the new, or of the device of having common

stock of the old corporation exchanged with the new for its "preference" stock and then retired.

For the reasons stated, the decision of the Board to the effect that the transfers by taxpayers were not made pursuant to a plan of corporate reorganization will be reversed; but in the assessment of taxes the Board will treat as related steps in one consolidated transaction the three exchanges of stock to which we have referred.

Reversed and remanded.