## GROSS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8241.

Circuit Court of Appeals, Fifth Circuit.

March 2, 1937.

Rehearing Denied March 27, 1937.

P. Robert G. Sjostrom, of Miami, Fla., for petitioner.

Joseph M. Jones, Norman D. Keller, and Sewall Key, Sp. Assts. to Atty. Gen., Robert H. Jackson and Jas. W. Morris, Asst. Attys. Gen., and Herman Oliphant, Gen. Counsel, Department of Treasury, and Chester A. Gwinn, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The Commissioner was upheld by the Board of Tax Appeals in taxing the petitioner, David Gross, on account of certain shares of stock in Leiman-Weidman Box Company which he received in 1931 from Tampa Box Company as a shareholder in the latter. The Commissioner contends that the stock was a partial liquidating dividend from Tampa Box Company, and its receipt realized for Gross a profit on his investment in Tampa Box Company. Gross contends that he got the new stock in pursuance of a reorganization of the Tampa Box Company within the meaning of the income tax statute, which operated to continue his investment and not to realize loss or gain on it.

The facts are not disputed. Tampa Box Company, a corporation, was engaged in making cigar boxes. So was the partnership Weidman, Fisher & Co. The shareholders and partners joined in December, 1930, in obtaining a charter for a new corporation called Leiman-Weidman Box Company to take over both the plants and businesses at a fair valuation and pay for them in stock. This was accomplished pursuant to action taken in the organization meeting of the new company held December 31, 1930. A joint letter of Tampa Box Company and Weidman, Fisher & Co. was submitted, wherein each offered to sell "all of its assets as shown by an inventory * * * and to receive in payment therefor stock of your corporation * * * upon a just valuation fixed by your Board of Directors." The stock was to be issued in accordance with an agreement theretofore made between the offerers. This offer was accepted, the new corporation stating that on January 1, 1931, it "will take full charge, management and control of the business of the Tampa Box Company and the business of Weidman, Fisher & Company, and operate the same as the owner of said properties." The transfer was accomplished the next day, and the stock for the purchase was issued, that going to Tampa Box Company being by its direction issued di-

rect to its shareholders in proportion to their holdings in Tampa Box Company. This division of stock had been directed in the stockholders'. meeting of Tampa Box Company which authorized the ·sale of its plant. In that meeting it was resolved that all the assets of Tampa Box Company be sold, including , about $100,000 of cash as operating capital for the new company, but that stocks and bonds and cash in excess of the $100,000 be reserved and that "Tampa Box Company be not immediately dissolved but that the said company continue holding its cash assets for the time being until such time as the Board of Directors of Tampa Box Company shall determine it advisable to make distribution of the remaining assets consisting of cash and bonds, and such time as the stockholders may determine the Tampa Box Company shall under the law be dissolved." The Tampa Box Company accordingly sold property and cash amounting in round figures to $750,000, the stock of the new company being issued therefor pro rata direct to the shareholders of Tampa Box Company. That stock was 67½ per cent. of all classes of stock in the new company. Net cash assets not sold by Tampa Box Company were about $178,000. On January 19, 1931, the directors of Tampa Box Company distributed $120,000 of this to its shareholders, and a· year later distributed $40,000 more. These, of course, were liquidating dividends and properly so treated. No stock in Tampa Box Company has ever been surrendered, but that company remains intact though inactive. The question is, we repeat, whether the stock of the new company thus pro rated to Gross was a partial liquidating dividend or received in pursuance of a plan of reorganization.

While the income tax laws do in general regard corporate entities, one case in which they look through them to the real effect of a transaction is in so-called reorganizations. When stock or property is manipulated through corporate organizations, but there is no substantial change in the ultimate beneficial ownership, gain and loss is not considered to be realized, because there is not a real sale, and the investment is only continued in an altered form until some later conversion occurs. The provisions of the statute are controlling, and are to be applied in the light of this general purpose. Revenue Act of 1928, § 112 (b) (5), 26 U.S.C.A. § 112 (b) (5) and note, reads: "No gain or.loss shall

be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation * * * if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange." `Section 701 (a) (1), 26 U.S.C.A. § 1696 (1), declares that "person" shall include an individual, a partnership, and a corporation. The Board thought that since the Tampa Box Company and the partnership simultaneously transferred their properties solely for stock and thereafter controlled the new corporation, and the amount of stock received by each was in proportion to their interests in the property, no gain or loss accrued to either; but that when the Tampa ·Box Company in turn distributed the stock received by it to its own shareholders, section 115 (c), 26 U.S.C.A. § 115 note, as to ·distributions by corporations came into play and that the new stock is to be valued and the gain taxed to the shareholders. But section 115 (c) itself says that the gain or loss "shall be recognized only .to the extent provided in section 112." We find in section 112 (g), 26 U.S.C.A. § 112 note, ·this provision: "If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the organization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized." Gross did not surrender his old stock for the new. The new stock did come to him in pursuance of and by the .express provisions of the transaction between Tampa Box Company and the ,new corporation, and if in that transaction each of those corporations was a party to a reorganization, no gain is to be recognized as accruing to him. Reorganizations and the parties thereto are defined in section 112 (i), 26 U.S.C.A. § 112 note: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation). * * * The

term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation." The transaction here in question is of the general character of a merger. The property acquired by the new corporation was not to be paid for with money, but through a continued interest in the property and business transferred. The Tampa Box Company did acquire 67½ per cent., more·than a majority, of the voting stock and all other classes of stock of the new corporation by the transaction. There was a reorganization under the first parenthetical instance of a merger above quoted.

Equally, though perhaps not so clearly, there was a reorganization also under the second parenthetical instance; for at the same time that Tampa Box Company was acquiring a majority of the stock of the Leiman-Weidman Box Company, the latter acquired "substantially all of the properties" of the Tampa Box Company. Note that the statutory expression is "properties," not assets. All the properties of Tampa Box Company useful in its business, including such cash as was needful for working capital, were transferred entire to the new corporation with intent that the business be continued. The surplus cash assets, though property in a broad sense, were such as might have been paid out as an ordinary cash dividend before the transfer, and were not a substantial part of the business "properties" of the Tampa Box Company. So that even if Tampa Box Company's stock acquisition had been less than a majority, there would still have been a reorganization of Tampa Box Company under the last clause of the definition. Compare Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L. Ed. 284; Nelson Co. v. Helvering, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281; G. & K. Mfg. Co. v. Helvering, 296 U.S. 389, 56 S. Ct. 276, 80 L.Ed. 291.

Therefore, by the definitions quoted from the statute the transaction was a reorganization and both corporations were parties to it. The stock in the Leiman-Weidman Box Company which Tampa Box Company acquired in the reorganization and distributed to Gross as its shareholder in pursuance of the plan of reorgan-

ization realized no gain to him. The law considers that there has been no real sale and that Gross still has that much of his original investment in substantially the same business. We think the Board reached a wrong conclusion, and that taxation of Gross for a gain on his investment must wait on some conversion by him of his new stock. The judgment is reversed with direction to correct the tax assessed in accordance with this opinion.