**HELVERING, Commissioner of Internal Revenue, v. ELKHORN COAL CO.**

No. 4158.

Circuit Court of Appeals, Fourth Circuit.

Oct. 18, 1937.

On Rehearing April 5, 1938.

HENRY H. WATKINS, District Judge, dissenting.

———◇———

Arnold Raum, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and

Sewall Key and Ellis N. Slack, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Leo H. Hoffman, of New York City (Hoffman & Knox, Robert W. Knox, and Francis C. Moore, all of New York City, on the brief), for respondent.

Hugh Satterlee, Logan Morris, and Weill, Satterlee, Green & Morris, all of Washington, D. C., amici curæ, on rehearing.

Before PARKER and NORTHCOTT, Circuit Judges, and HENRY H. WATKINS, District Judge.

PARKER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals holding profit realized by the Elkhorn Coal & Coke Company upon a transfer of certain mining properties to the Mill Creek Coal & Coke Company to be nontaxable. The ground of the decision was that the transfer was made pursuant to a plan of reorganization within the meaning of section 203(h) (1) (A) of the Revenue Act of 1926, 44 Stat. 12. The facts were stipulated and are set forth at length in the findings of the Board which are reported with its opinion in Elkhorn Coal Co. v. Com'r, 34 B.T.A. 845. Those material to the question presented by the petition are in substance as follows:

Prior to December 18, 1925, the Elkhorn Coal & Coke Company, to which we shall hereafter refer as the old company, owned certain coal mining properties in West Virginia and certain stocks in other mining companies engaged in business in that state. It was closely associated with the Mill Creek Coal & Coke Company, which owned neighboring property; and a majority of the directorate of both corporations consisted of the same persons. Early in December, 1925, a plan was formed whereby the old company was to transfer its mine, mining plant, and mining equipment at Maybeury, W. Va., to the Mill Creek Company in exchange for 1,000 shares of the capital stock of that company. This exchange was accomplished on December 31, 1925, at which time, it is stipulated, the stock received by the old company had a fair market value of $550,000 which is in excess of the deficiency asserted by the Commissioner. There is no contention that the transfer by the old company was to a corporation controlled by it or by its stockholders and therefore within the nonrecognition pro-

vision of section 203(h) (1) (B) of the act; but the argument of the taxpayer is that the transfer was of all the properties of one corporation for the stock of another, and therefore within the nonrecognition provision of section 203(h) (1) (A).

The contention that the transfer in question was of all the properties of the old company depends upon the legal conclusion to be drawn from certain evidentiary facts relating to the prior organization of another corporation and the transfer to it of all the property of the old company which was not to be transferred to the Mill Creek Company. These facts, which were found by the Board and are undisputed, are as follows: At the time that the transfer to the Mill Creek Company was decided upon, the officers of the old company caused another corporation to be organized under the name of the Elkhorn Coal Company, which we shall refer to hereafter as the new company, and on December 18, 1925, transferred to it, in exchange for 6,100 shares of its stock, all of the property of the old company which was not to be transferred to the Mill Creek Company except certain accounts, which were transferred to the new company on December 28, 1931, in consideration of its assuming the liabilities of the old company. The 6,100 shares of stock in the new company were promptly distributed by the old company as a dividend to its stockholders. This left the old company owning only the property which was to be transferred to the Mill Creek Company under the plan and which was transferred to that company on December 31st, as mentioned in the preceding paragraph. Following that transfer and the receipt by the old company of the 1,000 shares of the stock of the Mill Creek Company pursuant thereto, the new company proceeded to place itself in the same position relative to the stockholders of the old company that the old company had occupied, and then to wind up its affairs. It accomplished that result in the following manner: On January 22, 1926, it exchanged 1,440 shares of its capital stock for the 7,540 shares of the outstanding capital stock of the old company, making the exchange with the stockholders of that company. This gave those who had been stockholders in the old company the same interest in the new company that they had had in the old, and gave to the new company the ownership of all of the stock in

734

the old. The 1,000 shares of stock received from the Mill Creek Company were then transferred to the new company and the old company was dissolved. No business whatever was done by the old company after the transfer of assets to the Mill Creek Company on December 31st; and no reason appears for the organization of the new company except to provide a transferee to take over and hold the assets which were not to be transferred to the Mill Creek Company so that the transfer to that company when made would be a transfer of all the assets of the old company.

The Board was of opinion that all of these transactions were carried through pursuant to prearranged plan, saying: "We do not doubt that before a single step was taken a plan had been formulated for regrouping the corporate assets"; and "The stipulated facts justify the inference that one of the motives which the stockholders of Elkhorn had in organizing the new corporation and causing the three corporations to adopt the several steps or plans of reorganization which were adopted and carried out, was to make the transfer of the mining properties from Elkhorn to Mill Creek without resulting tax liability to Elkhorn or to themselves." The Board thought, however, with five members dissenting, that because the transfers from the old company to the new were genuine and were separate and distinct from the transfer to the Mill Creek Company, the latter must be treated as a transfer of substantially all of the properties of the corporation within the meaning of the reorganization statute, summing up its conclusions as follows: "In our opinion, the facts show affirmatively that the transfer to Mill Creek was completely separate and distinct from the earlier transfer by Elkhorn to the new corporation. The transfer made on December 18 was complete within itself, regardless of what Elkhorn planned to do later, or did subsequently do. It was not a sham or a device intended to obscure the character of the transaction of December 31. The stipulated facts do not suggest other than a bona fide business move. The transfer made on December 31 was also complete within itself, and was made for reasons germane to the business of both corporations. This transfer falls within the terms of clause (A) of section 203(h) (1), whether or not Elkhorn was dissolved."

■ While we are bound by the Board's findings of evidentiary facts, we are not bound by the foregoing conclusion set forth in the opinion and embodying a mixed question of law and fact. As said by the Supreme Court in the recent case of Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 574, 81 L.Ed. 755: "The ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact. It is to be distinguished from the findings of primary, evidentiary, or circumstantial facts. It is subject to judicial review and, on such review, the court may substitute its judgment for that of the Board."

■ A careful consideration of the evidentiary facts discloses no purpose which could have been served by the creation of the new company and the transfer of the assets to it, except to strip the old company of all of its properties which were not to be transferred to the Mill Creek Company, in anticipation of that transfer. The creation of the new company and its acquisition of the assets of the old was not a corporate reorganization, therefore, within the meaning of the statute or within any fair meaning of the term "reorganization." It did not involve any real transfer of assets by the business enterprise or any rearranging of corporate structure, but at most a mere shifting of charters, having no apparent purpose except the avoidance of taxes on the transfer to the Mill Creek Company which was in contemplation. To use in part the language of the Supreme Court in Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355, it was "simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business," but to give to the intended transfer to the Mill Creek Company the appearance of a transfer of all the corporate assets so as to bring it within the nonrecognition provision of section 203(h) (1) (A).

Under such circumstances we think that the decision in Gregory v. Helvering, supra, is controlling. In that case, for the purpose of avoiding taxes on a liquidating dividend of shares of stock held by a cor-

poration, a subsidiary was organized within the terms of the reorganization statute and the shares were transferred to it. The stock of the subsidiary was then delivered to the sole stockholder of the original corporation and shortly thereafter the subsidiary was dissolved and the shares which had been transferred to it were delivered to the stockholder. The court held that although the organization of the subsidiary came within the letter of the reorganization statute, such corporate manipulation would be ignored when it fulfilled no proper corporate function and was not in reality a reorganization within the meaning of the statute. The court said: "In these circumstances, the facts speak for themselves and are susceptible of but one interpretation. The whole undertaking, though conducted according to the terms of subdivision (B), was in fact an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else. The rule which excludes from consideration the motive of tax avoidance is not pertinent to the situation, because the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose."

■ We do not see how that case can be distinguished from this. If the property which was to be transferred to Mill Creek had been transferred to a new company created for the purpose and had been by that company transferred to Mill Creek, no one would contend that there was a distinction; and certainly there is no difference in principle between creating a subsidiary to take and convey the property to the intended transferee and creating a subsidiary to take over the other assets and having the old company make the transfer. In either case, the apparent reorganization is a mere artifice; and it can make no difference which of the affiliated corporations makes the transfer of assets which it is desired to bring within the nonrecognition provisions of the statute.

■ It is suggested in the opinion of the Board that the case before us is analogous to that which would have been presented if the old company, prior to the transfer to Mill Creek, had distributed to its stockholders all of the assets except those destined for such transfer; but the distinction is obvious. In the case supposed, the business enterprise would have definitely divested itself of the property distributed. Here it did not divest itself of the property at all, but merely made certain changes in the legal papers under which it enjoyed corporate existence. No rule is better settled than that in tax matters we must look to substance and not to form; and no one who looks to substance can see in the mere change of charters, which is all that we have here, any reason for permitting a transfer of a part of the corporate assets to escape the taxation to which it is subject under the statute.

Congress has seen fit to grant nonrecognition of profit in sale or exchange of assets only under certain conditions, one of which is that one corporation shall transfer "substantially all" of its properties for stock in another. If nonrecognition of profit can be secured by the plan adopted in this case, the exemption is broadened to cover all transfers of assets for stock, whether "substantially all" or not, if only the transferor will go to the slight trouble and expense of getting a new charter for his corporation and making the transfer of assets to the new corporation thus created in such way as to leave in the old only the assets to be transferred at the time the transfer is to be made. We do not think the statutory exemption may be thus broadened by such an artifice.

Having reached this conclusion, it is unnecessary to decide whether the unity of the plan under which the transfer was made brings it, without a unifying contract, within the principles laid down in Starr v. Commissioner (C.C.A.4th) 82 F.(2d) 964, 968, wherein we said: "Where transfers are made pursuant to such a plan of reorganization, they are ordinarily parts of one transaction and should be so treated in application of the well-settled principle that, in applying income tax laws, the substance, and not the form, of the transaction shall control. First Seattle D. H. Nat. Bank v. Commissioner (C.C.A.9th) 77 F.(2d) 45; Prairie Oil & Gas Co. v. Motter (C.C.A.10th) 66 F.(2d) 309; Howard v. Commissioner (C.C.A.6th) 56 F.(2d) 781; American Security & Trust Co. v. Tait (D.C.) 5 F.Supp. 337. This is demanded also by the principle, equally well settled, that a single transaction may not be broken up into various elements to avoid a tax. Ahles Realty Corporation v. Commissioner (C.C.A.2d) 71 F.(2d) 150, 151; West Texas Refining & Development Co.

v. Commissioner (C.C.A.10th) 68 F.(2d) 77, 79, 80; Prairie Oil & Gas Co. v. Motter, supra (C.C.A.10th) 66 F.(2d) 309, 311; Tulsa Tribune Co. v. Commissioner· (C.C.A.10th) 58 F.(2d) 937."

For the reasons stated, the decision of the Board will be reversed, and the cause will be remanded to it for further proceedings in accordance with this opinion.

Reversed.

HENRY H. WATKINS, District Judge (dissenting).

I am unable to concur in the foregoing opinion. The reasons therefor will be briefly stated. The prevailing opinion recites the facts at some length but seems to lose sight of the emphasis that should be placed upon certain determinative and uncontradicted findings of the Board of Tax Appeals. Prior to December, 1925, when the transactions in question took place, Elkhorn Coal & Coke Company and Mill Creek Coal & Coke Company, both organized under the laws of West Virginia, had been actively engaged in coal mining operations; the former since its organization in 1889, and the latter since its organization in 1891. One of the Elkhorn Company's mines was located in McDowell county, W. Va.; the other at Maybeury in that state. Mill Creek's mines were located at Maybeury, adjacent to the property of Elkhorn. Owners of a controlling interest in the stock of Elkhorn likewise owned a controlling interest in Mill Creek, and the officers of the two companies were largely the same. In December, 1925, it was decided that it would be in the interest of economy to have all of the Maybeury properties owned by the two companies under one management, and for this purpose the reorganization plans outlined in the prevailing opinion were perfected. No claim is made that the transactions between Elkhorn Coal & Coke Company and Elkhorn Coal Company are taxable. The contention is that the transaction between Elkhorn Coal & Coke Company and Mill Creek Coal & Coke Company is taxable. Admittedly, if this transaction is isolated from the antecedent transactions, it was a transfer of all of the assets then owned by the one company to the other in exchange for stock. It is argued, however, that the antecedent transactions, which included the organization of the Elkhorn Coal Company, and the trans-

fer to it by the original company of approximately 80 per cent. of its properties in exchange for stock, and the ultimate liquidation of the original company, showed that the whole transaction was a mere device to permit the sale of the Maybeury mines without incurring the liability for income and profits tax. In this connection we call attention to the fact that the very purpose of the statute in question was to permit, through corporate reorganization, an exchange of corporate stock without tax liability at the time, permitting the holder of the stock to await its sale before incurring such liability. Two facts should be borne in mind in determining the questions at issue; first, that the Elkhorn Coal & Coke Company received nothing but stock and in turn transferred to its stockholders nothing but stock in exchange for its properties; second, that the primary purpose of the plan of reorganization related to a more economical operation of the mining properties which had previously been carried on for many years, and which have since been carried on for approximately twelve years. The case is in striking contrast with that of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355, and, so far from regarding that case as requiring a reversal of the decision of the Board of Tax Appeals, I am convinced that it furnishes ample authority for sustaining the Board. In the Gregory Case, the court said that if a reorganization is in reality effected within the meaning of the statute, its ultimate purpose will be disregarded since the legal right of the taxpayer to decrease the amount of what would otherwise be his taxes, or altogether avoid them by means which the law permits, cannot be doubted. The court held, however, that: "When subdivision (B) speaks of a transfer of assets by one corporation to another, it means a transfer made 'in pursuance of a plan of reorganization' (section 112(g) [26 U.S.C.A. § 112 note]) *of corporate business;* and not a transfer of assets by one corporation to another in pursuance of a plan having *no relation to the business of either,* as plainly is the case here." (Italics ours.) It was further held that that case involved "Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplish-

ment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. No doubt, a new and valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. It was brought into existence for no other purpose; it performed, as it was intended from the beginning it should perform, no other function. When that limited function had been exercised, it immediately was put to death." In that case, Mrs. Gregory was the owner of all of the stock of the United Mortgage Corporation, which held among its assets 1,000 shares of the Monitor Securities Corporation. For the sole purpose of procuring a transfer of these shares to herself in order to sell them, as she did immediately sell them for her individual profit, and at the same time to diminish the amount of income tax which would have resulted from direct transfer by way of dividend, she organized the Averill Corporation of which likewise she was the sole owner, and had the United Mortgage Corporation transfer to it the 1,000 shares of Monitor stock in exchange for all the corporate shares of the Averill Corporation. Having been organized on September 18, 1928, and transacted the business for which it was brought into life, the Averill Corporation was six days later, on September 24th, dissolved by distributing all of its assets, namely, the Monitor shares, to Mrs. Gregory. No other business was ever transacted or intended to be transacted. Contrast these facts with those above set out in the instant case, where the new corporation immediately entered into the active business of mining and has ever since discharged the mining functions for which it was chartered, and in which also the Mill Creek Company, in which other shares were acquired, was then fulfilling, and is still fulfilling, its corporate business of mining. There was no sham or pretense about the whole matter. It seems to me that the case comes more nearly under the decision of the Fifth Circuit Court of Appeals, David Gross v. Commissioner of Internal Revenue, 88 F.(2d) 567, which reverses David Gross, 34 B.T.A. 395; the last-mentioned case being one of those relied upon by the dissenting members of the Board of Tax Appeals in the Elkhorn Case.

## On Rehearing.

PARKER, Circuit Judge.

The rehearing granted in this case and careful consideration of the briefs filed and arguments made thereon have served only to strengthen the majority of the court in the opinion heretofore expressed; and we see no basis whatever for the contention that our former opinion was based on a ground not considered by the Board of Tax Appeals. The question before the Board was whether the transfer to Mill Creek was of all the assets of the old company; and that question must necessarily have been answered there as it must be here by a consideration of the real nature of the incorporation of the new company and the transfer made to it when viewed in relation to the plan for the transfer of assets to Mill Creek.

It was not intended by what was said in the original opinion, to the effect that the transfer of assets from the old company to the new did not constitute a bona fide reorganization, to suggest that the transfer was a taxable transaction, but to point out that the creation of the new company and the transfer of the assets to it was a mere shifting of charters having no purpose other than to give to the later transfer to Mill Creek the appearance of a transfer of all the corporate assets so as to bring that transfer within the non-recognition provisions of section 203(h) (1) (A), Revenue Act 1926, 44 Stat. 12. The transfer to the new company was non-taxable whether it was a real reorganization or a mere shifting of charters, which would of course come within the terms of the reorganization statute. It is only in relation to the subsequent transfer to Mill Creek that it becomes important to determine whether the organization of the new company and its taking over of the assets was a genuine reorganization. If there was no real reorganization and transfer, but a mere shifting of charters, the subsequent transfer to Mill Creek was not within the terms of the nonrecognition provision of the statute.

We are confirmed in our original opinion by the recent decision of the Supreme Court in Minnesota Tea Co. v. Helvering, 58 S.Ct. 393, 395, 82 L.Ed. ——. In that case there was a reorganization in which stockholders paid the debts of a corporation from the cash distributed to them in the course of the reorganization. The

738

question was whether the corporation was taxable on the amount of the debts thus paid on the theory that the cash used for that purpose was in reality received by the corporation, or whether it was nontaxable on the theory that the distribution to the stockholders was within the nonrecognition provisions of the statute. In holding the corporation taxable thereon the court said: "The conclusion is inescapable, as the court below very clearly pointed out, that by this roundabout process petitioner received the same benefit 'as though it had retained that amount from distribution and applied it to the payment of such indebtedness.' Payment of indebtedness, and not distribution of dividends, was, from the beginning, the aim of the understanding with the stockholders and was the end accomplished by carrying that understanding into effect. *A given result at the end of a straight path is not made a different result because reached by following a devious path.* The preliminary distribution to the stockholders was a meaningless and unnecessary incident in the transmission of the fund to the creditors, all along intended to come to their hands, so transparently artificial that further discussion would be a needless waste of time." (Italics ours.)

In the case at bar, the "aim" of the incorporation of the new company and the transfer made to it, was that the transfer to Mill Creek should appear to be a transfer of all of the assets of the company; and this was the end accomplished, and the only end accomplished so far as the record shows, by the incorporation and transfer. The incorporation of the new company and the transfer to it was a "meaningless and unnecessary incident." It is true that the new company was incorporated under the laws of a different state from the old; but it does not appear that any corporate purpose was served by this change of jurisdictions and certainly the integrity of the existing business was not affected by the change. Cf. Braden Steel Corp. v. Commissioner, 10 Cir., 78 F. 2d 808, 810. It is said that the transfer to Mill Creek had a real corporate purpose. This is true, but it was taxable unless constituting a transfer of all of the assets of the corporation. The incorporation of and transfer to the new company, which had no proper corporate purpose, were resorted to in order to give the transfer to Mill Creek the appearance of being a transfer of all the assets of the transferor

and hence not taxable. All that was done by the complicated corporate maneuvering employed was the transfer of a part of the assets of the old company to Mill Creek in exchange for 1,000 shares of its stock, leaving the business of the old company in the hands of the old stockholders, with a new charter, but otherwise unaffected. This result is "not a different result because reached by following a devious path."

And we think it clear that the incorporation of the new company and the transfer made to it were but parts of a single plan under which the transfer was made to Mill Creek and that they should be treated as parts of one transaction. When this is done, there is no room for the contention that all of the assets of the corporation were transferred to Mill Creek. Even though there was no unifying contract, the unity of the plan brings the case within the rule applied in Starr v. Commissioner, 4 Cir., 82 F.2d 964.

For the reasons stated here and in our former opinion, the decision of the Board of Tax Appeals will be reversed.

Reversed.

HENRY H. WATKINS, District Judge, dissents.