**HARTER v. HELVERING, Com'r of Internal Revenue.**

**CAREY v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 378.**

Circuit Court of Appeals, Second Circuit.

July 8, 1935.

Theodore B. Benson, of Washington, D. C., for appellants.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and F. E. Youngman, Sp. Assts. to the Atty. Gen., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

These are appeals (petitions to review) from orders of the Board of Tax Appeals fixing deficiencies in the taxpayers' income taxes for the year 1927, during which, as shareholders in a company called the "Boxboard Products Company," they received a dividend on shares held by them. They defended on the ground that this dividend had in large part been paid out of earnings made before March 1, 1913, and was to that extent not taxable. This depends upon a distribution made in 1926, by which the Boxboard Company redeemed its preferred shares. If this distribution is to be allocated against earnings made after March 1, 1913, it exhausted them as of the date when it was made, and the larger part of the dividend paid in 1927 came out of exempt earnings. The solution requires a statement at some length, not only of the affairs of the Boxboard Products Company, but of its predecessors.

The Philadelphia Paper Manufacturing Company was a Pennsylvania company organized in 1896; on March 1, 1913, its capital stock was only $100,000, but it had accumulated a surplus of $2,221,546.45. Between then and the end of June, 1923, it had accumulated $1,973,787.99 more. The Fibre Container Company was organized in 1916; its capital at the end of June, 1923, was $350,000, and its surplus, $211,-799.79. On June 30, 1923, a third company

was organized, likewise called the "Philadelphia Paper Manufacturing Company," which to avoid confusion we shall speak of as the "New Company." Shareholders in the old Philadelphia company got fifty shares of the New Company stock for one; those of the Fibre Company, five for one; the two older companies were merged into the New Company and ceased to exist, though by exactly what legal steps does not appear. At the conclusion of the merger the New Company had therefore issued $3,164,750 of capital stock and had a surplus of $1,692,384. The Boxboard Company was organized in 1921; it was small and apparently unsuccessful, for its nonpar shares were entered on its books at $66,945, against which there was a deficit of $17,388.95, leaving a net worth of a little less than $50,000. In April, 1926, the Boxboard Company consolidated with the New Company, as follows: It received all the shares of the New Company and in exchange issued to that company's shareholders 63,295 shares of its own preferred 7 per cent. stock of a par of $50 and a like number of nonpar common shares. The assets of the New Company were not transferred, and in September, 1926, the New Company agreed to sell all of them to the Container Corporation of America; the price was $2,500,000 in cash and a like amount of 7 per cent. preferred shares of the Container Company. At the same time the Boxboard Company retired at a premium of $2.50 its whole issue of preferred shares; this required $3,322,987.50, which the Boxboard Company borrowed from the New Company by means of its note. The source of the money paid by the New Company does not appear; the cash payment of the Container Company was not enough by more than $800,000; apparently either cash to that extent was reserved out of the assets upon the sale to the Container Company, or the New Company sold some of its preferred shares of the Container Company received on the sale. On December 15, 1926, the Boxboard Company liquidated the New Company, taking over substantially all its assets and cancelling the note. The question is how to allocate the payment to the Boxboard preferred shareholders made out of the proceeds of this loan by the New Company.

■ The commissioner held that since the Boxboard Company, when it got the New Company shares, did not get its assets, the payment made by it to retire the preferred shares was not a payment out of the earnings of the New Company; it was borrowed money and not "essentially equivalent to the distribution of a taxable dividend" under section 201 (g) of the Revenue Act of 1926 (26 USCA § 932 (g). That again, when the Boxboard Company in December got possession of the New Company's assets, enough surplus earned since 1913 remained for the distribution of 1927, $980,000. To this we cannot agree. When the Philadelphia Paper Manufacturing Company and the Fibre Container Company merged on June 30, 1923, no gain was "recognized" to the shareholders, for it was a "reorganization" under section 202 (c) (2) of the Revenue Act of 1921 (42 Stat. 229), and section 203 (b) (2) of the Revenue Act of 1926, 26 USCA § 934 (b) (2). A consequence of this is that for purposes of allocating dividends under section 201 (b) of the Revenue Act of 1926, 26 USCA § 932 (b), against earnings before and after March 1, 1913, the surplus is regarded as unchanged. The commissioner proceeded on the assumption that the shares issued by the New Company, $3,164,750, "impounded" a corresponding amount of surplus and left for distribution as dividend only the bookkeeping surplus, $1,692,384.34. We have decided otherwise, Commissioner v. Sansome, 60 F.(2d) 931, and the Ninth Circuit agrees. U. S. v. Kauffmann, 62 F.(2d) 1045. Thus the surplus of the New Company was the difference between the assets of both the old companies and the capital shares of both, $4,307,134.34, of which only $2,085,587.78 was earned after February 28, 1913. Again when in April, 1926, the New Company consolidated with the Boxboard Company, the same result ensued; for purposes of allocation the capital was $516,945, and the surplus $4,289,745.39, of which $2,068,198.83 had been earned after February 28, 1913. These figures are only approximate for the record does not show what was the surplus in April, 1926.

■ We do not regard the money withdrawn from the New Company in September, 1926, as truly a loan. The character of the transaction is not to be determined by the form in which it was cast, but by the intent to be inferred from all the facts. The Boxboard Company had no assets to speak of except the shares of the New Company itself; it is manifest that it could not have intended to pay a note of more than $3,300,000 out of dividends from the

payee's shares, or out of those shares themselves. We may look to what it did in the following December to color its earlier intent; it meant to cancel the note by taking over the assets just as it did. That withdrawal was therefore necessarily a "distribution," and by virtue of section 201 .(b) of the Revenue Act of 1926, it was "made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits." In this view it is of no moment whether it was itself a dividend to the Boxboard Company and taxable in part under section 201 (g) and in part as a distribution of earnings; it is enough that the distribution must be marshalled first against the earnings after February 28, 1913, for it more than exhausted them. What was left was capital or earlier earnings; when the Boxboard Company took it over, it retained this character, and no distribution of it could be a taxable dividend. Therefore the distributions in 1927 were not taxable except in so far as they included earnings since the distribution in September, 1926.

Order reversed; cause remanded.