## BAKER v. COMMISSIONER OF INTERNAL REVENUE.
### No. 121.

Circuit Court of Appeals, Second Circuit.
Jan. 6, 1936.

J. Nelson Anderson, of Washington, D. C. (Stanley Worth, of Washington, D. C., of counsel), for petitioner.

Frank J. Wideman, Asst. Atty Gen., and Sewall Key and Ellis N. Slack, Sp. Assts. to the Atty. Gen., for respondent.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The petitioner is the executor of the estate of George F. Baker, Sr., a former resident of the city of New York, who died May 2, 1931. The controversy relates to the income taxes of the decedent for the taxable year 1926. He will be referred to as the taxpayer.

In that year he owned 5,000 shares of the capital stock of the New Jersey General Security Company which he had acquired in 1894 at a price which was not less than the March 1, 1913, value of the stock. In 1926 the corporation had outstanding 19,786 shares, including those owned by Mr. Baker, and in that year distributed to its stockholders $2,631,804, of which the taxpayer received $665,000. Of this amount he received $595,000 on April 1, 1926, being $275,000 in cash and bonds of the Passaic Consolidated Water Company then worth $320,000. With the receipt of this April 1, 1926, distribution, he was notified by the Security Company that it had been advised that about 38.902 per cent. of it would be taken from surplus accumulated in the profit and loss account of the company before March 1, 1913. The taxpayer reported in his return for 1926 all of the distribution he had received in that year from the Security Company except $231,468.90, which was the 38.902 per cent. of it which he treated as a return of capital. The addition of this amount to his taxable income created the deficiency.

The issue is whether the 1926 distributions to the taxpayer were correctly treated by the Commissioner and the Board of Tax Appeals as all made from earnings and profits of the Security Company accumulated since February 28, 1913, and

therefore income taxable to the recipient, in view of the facts about to be stated and the provisions of section 201 (a) (b) of the Revenue Act of 1926, 44 Stat. 10, 26 U.S.C.A. § 115 note, supplemented by T.R. 69, arts. 1541 and 1542, promulgated thereunder and printed in the margin.[1]

From December 31, 1900, to October 31, 1923, the Security Company owned all of the stock of the Montclair Water Company, Acquackanonk Water Company, East Jersey Water Company, Passaic Water Company, and Kearney Water Company. On the last-mentioned date it caused the Passaic Consolidated Water Company to be organized, to which it transferred all of the stock of the five companies in return for all of the stock of the Consolidated Company, which then took over all of the assets and assumed all of the liabilities of the five companies. This was a nontaxable reorganization made for the purpose of facilitating the sale of the water systems to the communities which they served. From as early as 1919 such a sale had been a probability. Late in 1923 the Montclair system was sold.

On March 11, 1924, the Consolidated Company received from the town of Montclair, as part of the purchase price of the water distribution system of Montclair Water Company bought pursuant to previous negotiations, $1,200,000 in cash, and on March 13, 1924 used it to purchase a like amount of United States Treasury certificates which it held until November 18, 1924, when it delivered them to the Security Company, its sole stockholder, pursuant to a resolution providing for the distribution of the town of Montclair payment as a dividend. It is undisputed that on December 31, 1923, the Consolidated had undistributed earnings and profits of the five companies it took over which had been accumulated since February 28, 1913, which aggregated $1,142,231.05. It also had earnings of its own amounting to $65,446.62, making a total of $1,207,677.67. Its adjusted net loss from January 1 to June 11, 1924, was $49,219.39, leaving it with $1,158,458.28 of post February 28, 1913, profits available for distribution on the latter date. It did on June 11, 1924, distribute $140,000 to its sole stockholder as a dividend; followed that on November 18, 1924, by the distribution of the $1,200,000 in United States Treasury certificates; and on December 23, 1924, by $140,000 in addition, making a total distribution to the Security Company of $1,480,000 in 1924. Of this amount $1,158,458.28 computed as above was treated by the Board as having been from earnings and profits accumulated since February 28, 1913.

The respondent's computation shows that at the beginning of 1926 the Security Company had earnings and profits accumulated since February 28, 1913, to the amount of $2,594,973.44. The petitioner agrees except as to the above $1,158,458.28, which is included in it, and as to $384,223.26, which he claims should be deducted as a loss sustained by the Security Company in performing a surety agreement.

The claimed deductions which were

---

[1] Sec. 201. (a) The term "dividend" when used in this title (except in paragraph (9) of subdivision (a) of section 234 and paragraph (4) of subdivision (a) of section 245) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

(b) For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 204.
* * *

Treasury Regulations 69 promulgated under the Revenue Act of 1926:

Art. 1541. Dividends—Dividends for the purpose of Title 11 comprise any distribution in the ordinary course of business, even though extraordinary in amount, made by a domestic or foreign corporation to its shareholders out of its earnings or profits accumulated since February 28, 1913. Although interest on State bonds and certain other obligations is not taxable when received by a corporation, upon amalgamation with the other funds of the corporation such income loses its identity and when distributed to shareholders in dividends is taxable to the same extent as other dividends. * * *

Art. 1542. Source of Distribution. For the purpose of income taxation every distribution made by a corporation is made out of earnings or profits to the extent thereof and from the most recently accumulated earnings or profits.

disallowed in computing the earnings and profits of the Security Company since February 28, 1913, were based upon payments made by it during 1923, 1924, 1925, and 1926 to discharge its obligation as surety for the Jersey City Water Supply Company which had been organized to build, and had built, a water system for the city of Jersey City. It completed that in 1911, and then its capital stock was reduced to a $1 value by returning $99 per share to its stockholders. The Security Company owned about 77 per cent. of its capital stock from 1913 to 1926, a period during which various damage suits were brought against the Supply Company. On February 28, 1913, the Supply Company paid the Security Company $115,000 in cash in consideration for its agreement to become surety for the Supply Company for the payment of damage claims, and further agreed that the Security Company should have recourse upon the Supply Company to indemnify it for the payments it might have to make to discharge its obligation as surety. During the years above mentioned, the Security Company paid $384,223.26 as such surety, and charged the payments on its books as a debt against the Supply Company. In 1927 these advances were paid by the Supply Company out of a judgment it recovered in a suit which had been pending against the city of Jersey City since 1911. The Supply Company had no other assets out of which the Security Company could have collected its payments when they were charged on its books, and the recovery of any judgment was then doubtful, but the fact remains that no part of the debt so set up was found to be worthless and charged off in any of the years for which it is now claimed that deduction should be allowed.

If it was correct to include these two amounts in the post February 28, 1913, earnings and profits of the Security Company available for distribution in 1926, they were sufficient to pay all of the dividends received by its stockholders, including the taxpayer, in that year.

█ Whether the distribution made by Consolidated to Security in 1924 was correctly determined to have been out of taxable earnings to the extent of $1,158,458.28 depends upon whether it was bound to distribute such earnings before it could make any tax-free distribution. It had not in fact earned all of this amount itself, but the combined taxable earnings of itself and of the five predecessor companies made up that amount. As the taking over of those five companies by Consolidated was a nontaxable reorganization, their earnings had the same taxable status after the reorganization as before. They became the post February 28, 1913, earnings and profits of Consolidated so far as taxation is concerned. Commissioner v. Sansome (C.C.A.2) 60 F.(2d) 931; United States v. Kauffmann (C.C.A.) 62 F.(2d) 1045. This being so, there was available to Consolidated for distribution to its sole stockholder, Security, when it made the distribution of $1,200,000 on November 18, 1924, earnings and profits to the amount of $1,158,458.28 which might have been so used. The distribution, therefore, falls squarely within the provisions of section 201 (a) (b) of the 1926 act, 44 Stat. 10, 26 U.S.C.A. § 115 note, and article 1542 of T. R. 69, and became to the extent of $1,158,458.28 a taxable dividend to Security which augmented its post February 28, 1913, earnings and profits available in 1926 for distribution to its own stockholders.

The argument of the petitioner to the effect that the Board erred in failing to find that the sale of the Montclair system was part of a general plan to sell all the properties of the five companies which went into Consolidated, making the distribution a nontaxable dividend in partial liquidation, is noticed only to point out its immateriality. Whether it was a dividend in partial liquidation or not does not alter the fact that Consolidated had the $1,158,458.28 of earnings and profits accumulated since February 28, 1913, when it distributed that amount and more, and it is but the $1,158,458.28 with which we are concerned. We hold only that it could not distribute the Montclair payment tax free until it had distributed its available taxable earnings and profits.

█ Nor was it error to make up those earnings and profits by including therein the $384,223.26 claimed as a deduction. Those payments were all made under an agreement which bound the Supply Company to repay them to the Security Company, and they were so made and charged to the Supply Company. They were not deductible expenses because they were advances on credit. Glendinning, McLeish & Co. v. Commissioner (C.C.A.) 61 F.(2) 950; Island Petroleum Co. v. Commissioner (C.C. A.) 57 F.(2d) 992. After being charged

as debts, they would not be deductible until charged off as worthless; a thing never done. Accordingly, the Security had previous earnings and profits available in 1926 for distribution which it had accumulated since February 28, 1913, amounting to $2,594,973.44. In that year it had earnings and profits of $555,790.98, making in all $3,150,764.42 of taxable earnings and profits available for distribution in that year. As it distributed only $2,631,804 in 1926, all the dividends the taxpayer received could have been paid from earnings and profits accumulated since February 28, 1913, and were taxable dividends when received by him under section 201 (a) (b) and the applicable regulations noted above.

The errors claimed in permitting cross-examination to extend beyond the limits of the direct and the reception of evidence subject to motion to strike which was made and denied would not affect any of his substantial rights, even if the petitioner were technically correct in his criticism of what was done in that regard.

Affirmed.