**CAMPBELL v. UNITED STATES.**
**NEWBOLD v. SAME.**

Nos. 8224, 8225.

Circuit Court of Appeals, Third Circuit.

Argued March 4, 1943.

Decided July 25, 1944.

Henry S. Drinker, of Philadelphia, Pa. (Frederick E. S. Morrison and Calvin H. Rankin, both of Philadelphia, Pa., on the brief), for appellants.

Newton K. Fox, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellee.

Before MARIS, JONES and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The pending appeals, which were argued together, present the same legal question, namely, whether the undistributed earnings of two predecessor corporations (accumulated after February 28, 1913, and not distributed up to the time of a successor company's acquisition of the predecessors' businesses and assets as a result of a tax-free reorganization) may be included in determining whether cash distributions made by the successor company in later years to its stockholders were taxable in full as dividends paid out of its earnings and profits within the meaning of Sec. 115(a) of the Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int.Rev.Acts, pages 520, 703, the successor company's net earnings from the time of its incorporation being insufficient to provide for the distributions in question.

The facts which, as stipulated, were found by the court below disclose the following situation.

Sharp & Dohme, Inc. (hereinafter referred to as the New Company) was incorporated in July 1929 with an authorized capital stock consisting of preferred and common shares. On August 6, 1929, pursuant to a contract of June 28, 1929, between bankers and the stockholders of a previously existing corporation of the same name (hereinafter referred to as the Old Company), the New Company acquired the business and assets of the Old Company, subject to its liabilities, in exchange for a certain amount of cash and a portion of the preferred and common shares of the New Company's capital stock. In accordance with the contract the preferred shares given in exchange were issued directly to the stockholders of the Old Company and the common shares and cash were issued to the Old Company and by it distributed pro rata to its stockholders. To obtain the cash necessary for the purpose, the New Company sold to the bankers a portion of its remaining common shares and, through the bankers, sold to clients of the latter, a portion of the remaining preferred shares.

When the contract plan had been fully carried out, the stockholders of the Old Company were in possession of the agreed upon cash distribution and 46% of the common and 37% of the preferred capital stock of the New Company then outstanding and the latter was in possession of the entire business and assets of the Old Company. Although the transaction qualified as a reorganization under Sec. 112(i) (1) (A) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 379, for the purpose of determining that no gain or loss was to be recognized from the Old Company's transfer of its assets and the exchange of securities, the stockholders of the Old Company were taxable by virtue of Sec. 112(c) to the extent of the gain realized on account of the cash received by them in the exchange. See Starr v. Commissioner, 4 Cir., 1936, 82 F.2d 964, 966, certiorari denied 298 U.S. 680, 56 S.Ct. 948, 80 L.Ed. 1401.

Prior to the sale and transfer of the Old Company's assets and business to the New Company, the former had accumulated large earnings and profits since February 28, 1913 which remained undistributed.

On October 7, 1929, pursuant to a contract of September 24, 1929, between the New Company and H. K. Mulford Company (an unrelated company hereinafter referred to as Mulford), which superseded a contract of August 2, 1929, between stockholders of Mulford and the bankers, the New Company acquired the business and assets of Mulford, subject to its liabilities, in exchange for a certain amount of cash and a portion of the preferred and common shares of the remaining authorized capital stock of the New Company. The cash and stock were distributed pro rata to the stockholders of Mulford in complete redemption and cancellation of the outstanding shares of stock of that company.

As in the case of the Old Company, the New Company's acquisition of the business

and assets of Mulford in exchange for stock and cash was in a reorganization which resulted in a tax-free exchange except for the cash distributed to the stockholders of Mulford. The stipulated effect of the Mulford transaction was identical with the result attained in the case of the Old Company.

Prior to the sale and transfer of Mulford's assets and business to the New Company, Mulford also had accumulated large earnings and profits since February 28, 1913 which remained undistributed.

Both plaintiffs are holders of preferred shares of the New Company[1] and in 1933 and 1934 received cash distributions on account of their stock which each respectively returned as taxable dividends[2] for the years in question. Subsequently each filed a claim for refund on the ground that a portion of the income so reported as taxable dividends constituted a return of capital by the distributing corporation which was, therefore, rightly to be reflected in reduction of the cost base of the taxpayers' stock and not as taxable income.

As appears by the stipulation, the earnings of the New Company from the time of its incorporation in 1929 were insufficient to provide in full for the distributions which it made to its stockholders in 1933 and 1934. It is also stipulated that the total distributions made by the New Company on account of its preferred shares through the year 1934 did not equal the cost base of the stock of either of the plaintiffs. Consequently, no gain or loss to them was to be recognized as upon a sale or other disposition of their stock. The Commissioner rejected the claims for refund and the taxpayers severally brought the suits here involved for the recovery of the portions of the taxes which, allegedly, were improperly assessed and collected. The court below, holding that the distributions were dividends from accumulated earnings

of the distributing company, entered the judgments for the defendant from which the plaintiffs respectively took the present appeals.

A literal reading of the Revenue Acts of 1932 and 1934 would seem to call for the conclusion that the district court was in error. Although distributions of money or property made by a corporation to its stockholders may be distributed as dividends, only those distributions are taxable as dividends which are made by the corporation "out of its earnings or profits accumulated after February 28, 1913."[3]

The Commissioner successfully contended in the district court that the earnings or profits of the Old Company and of Mulford must be treated as the earnings or profits of the New Company. He urges that the rule is that where, following a tax-free reorganization, the successor corporation makes distributions to its stockholders in excess of its earnings from the time of its incorporation, the accumulated surplus earnings of the predecessor corporations at the time of the reorganization are to be treated as having been carried over to the successor corporation in determining the extent to which such distributions are taxable as dividends.

This rule was first enunciated in Commissioner v. Sansome, 2 Cir., 1932, 60 F.2d 931, certiorari denied Sansome v. Burnet, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575, was adopted in this circuit[4] and has been followed in every circuit in which the question has been determined.[5]

It is, therefore, necessary to examine the Sansome case in order to determine whether it does enunciate as a principle of law the doctrine contended for by the Commissioner and whether that doctrine is applicable to and determinative of the question before us. The pertinent facts in that case were as follows:

---

1 The plaintiff Campbell acquired his shares in the New Company in exchange for Mulford stock which he held, while the plaintiff Newbold acquired her shares in the New Company by purchase.

2 The tax return for the plaintiff Newbold for the year 1933 showed no income subject to tax. However the Commissioner subsequently assessed a deficiency in tax with interest which she paid in an amount in excess of the refund which she now seeks.

3 Section 115(a) of the Revenue Acts of 1932 and 1934.

4 Corrigan v. Commissioner, 3 Cir., 1939, 103 F.2d 1010, certiorari denied 308 U.S. 576, 60 S.Ct. 91, 84 L.Ed. 482, decided on the authority of Baker v. Commissioner, 2 Cir., 1936, 80 F.2d 813; Barnes v. United States, D.C.E.D.Pa., 1938, 22 F.Supp. 282.

5 Georday Enterprises v. Commissioner, 4 Cir., 1942, 126 F.2d 384; Murchison's Estate v. Commissioner, 5 Cir., 1935, 76 F.2d 641; United States v. Kauffmann, 9 Cir., 1933, 62 F.2d 1045.

Corporation A transferred all its assets to newly created Corporation B with additional charter powers. Corporation B assumed all existing obligations of Corporation A and issued all its shares directly to the stockholders of Corporation A without change in the proportion of their holdings. Thereafter Corporation A dissolved. Corporation B operated without profit for little more than a year. It then discontinued business and made payments to its stockholders in partial liquidation. The total of these distributions was less than the surplus and undivided profits of Corporation A at the time it transferred its assets to Corporation B.

The Commissioner treated these payments as dividends. The taxpayer claimed the right to apply the payments to amortize his cost and to pay a tax upon only so much as exceeded his cost. The Board of Tax Appeals held that the payments were not dividends because they were not made out of the earnings or profits of the distributing corporations. The Circuit Court of Appeals reversed. Judge Learned Hand, speaking for the court, said: (60 F.2d at page 933) " * * * a corporate reorganization which results in no 'gain or loss' under section 202(c) (2) * * * does not toll the company's life as continued venture under section 201, and that what were 'earnings or profits' of the original, or subsidiary, company remain, for purposes of distribution, 'earnings or profits' of the successor, or parent, in liquidation."

The gist of the decision was that where a new company takes over in place of the old, with assets, liabilities and stockholders unchanged, and where no tax results from such a reorganization, the new company is but the alter ego of the old and the change in corporate form cannot be permitted to freeze into capital the undistributed earnings of the old company. The court, believing it unlikely that Congress would permit stockholders to postpone indefinitely their tax liability upon moneys which they received out of earnings and profits of their corporation merely because of a reorganization effected to secure additional charter powers, construed the revenue acts as prohibiting such a result.

In the cases now before us new stockholders, including Mrs. Newbold, the plaintiff in No. 8225, who paid cash for their shares, came into the corporate set-up as a result of the reorganization. In fact the proportionate ownership of the stockholders of the Old Company and of Mulford in the New Company was reduced to a fraction of their interests in the former companies. The identity of proprietary interest which existed in the Sansome case and motivated the court to disregard the corporate entities and treat the earnings of the predecessor corporation as though they were earnings of the successor corporation is, therefore, completely lacking. We think that for this reason alone the doctrine of the Sansome case, which by judicial construction operates to transfer earnings from the corporation which earned them to its successor in reorganization, is inapplicable. Most of the cases in which the Sansome doctrine has been applied dealt with reorganizations such as the one which took place in the Sansome case, in which the old stockholders ended up by owning the same enterprise in the same proportions.[6] We are aware that it has also been applied to transfers of corporate assets which, while constituting tax-free reorganizations within the meaning of the revenue act, none the less involved the introduction of new capital and new stockholders into the corporate picture with consequent changes in the proportionate interests of the old stockholders in the enterprise.[7] We cannot accede to such an extension of the Sansome doctrine,[8] however, because it involves the contradictory concept of a corporation buying profits with money con-

footnotes

[6] United States v. Kauffmann, 9 Cir., 1933, 62 F.2d 1045; Murchison's Estate v. Commissioner, 5 Cir., 1935, 76 F.2d 641; Harter v. Commissioner, 2 Cir., 1935, 79 F.2d 12; Baker v. Commissioner, 2 Cir., 1936, 80 F.2d 813; Corrigan v. Commissioner, 3 Cir., 1939, 103 F.2d 1010, certiorari denied 308 U.S. 576, 60 S.Ct. 91, 84 L.Ed. 482; Barnes v. United States, D.C.E.D.Pa., 1938, 22 F. Supp. 282.

[7] Crocker v. Commissioner, 1934, 29 B.T.A., 773.

[8] Mertens in Vol. 1, § 9.58, pp. 509, 510 of his text on Law of Federal Income Taxation says:

"It has been implied, however, that the general principle of 'inherited' earnings or profits applies wherever there is a 'nontaxable' reorganization. It may be misleading, however, to state its scope in such general terms. Assuming that the provision in the statute taxing corporate distributions of 'its earnings of profits' is capable of requiring the inclusion of the earnings or profits of predecessor cor-

tributed by new stockholders, whereas profits by their nature must be realized from other transactions and may not themselves be acquired by purchase.

If it be suggested that the New Company did not acquire any new capital in the reorganization and that the money which it distributed to old stockholders came from the sale of New Company shares to which the old stockholders were entitled, it may be answered that even if the facts support this theory we would not be at liberty thus to isolate one step in what the Circuit Court of Appeals for the Fourth Circuit in Starr v. Commissioner of Internal Revenue, 82 F.2d 964(1936), certiorari denied 298 U.S. 680, 56 S.Ct. 948, 80 L.Ed. 1401, held to be in reality but a single transaction constituting a reorganization within the meaning of Section 112(i) (1) of the Revenue Act of 1928. In that case it was held that the money received by the old stockholders was received by them in connection with a reorganization and was, therefore, taxable under Section 112(c) to the extent that it represented gain to them upon the entire exchange involved in the reorganization. To hold that this money was received by the old stockholders for the sale of shares of New Company stock owned by them would subject it to taxation only to the extent that it represented a gain over the cost basis of the particular shares sold, a wholly different theory from that adopted in the Starr case. Such a holding would thus in effect overrule the decision of the Circuit Court of Appeals for the Fourth Circuit which we are satisfied was correct.

The doctrine of the Sansome case that the accumulated earnings of the predecessor corporation in a tax-free reorganization shall be deemed carried over to the successor corporation for the purpose of distribution to its stockholders as dividends cannot apply to a situation where the accumulated earnings of the predecessor corporation have been distributed to its stockholders at the time of the reorganization. Obviously earnings cannot at one and the same time be distributed to the stockholders of the predecessor corporation and transferred to the successor corporation. We think that in the present cases it must be held that the accumulated earnings of the Old Company and of Mulford were distributed to the stockholders of the old companies. Such a conclusion is called for by a provision of the Revenue Act of 1928 which was in force when the reorganization took place.

Section 112(c) of that Act provided:

"(c) Gain from Exchanges not Solely in Kind. (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

"(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property."

As we have already pointed out the reorganization involved the receipt by the stockholders of the Old Company and Mulford of money which under the facts was taxable to them under Section 112(c). In each case the distribution exceeded the

porations, it would still seem to be necessary to draw distinctions based on the type and character of the reorganization in each case. Possibly a different conclusion may be applicable where there has been merely an exchange by the parent corporation of its *stock for stock* of the subsidiary in a tax-free reorganization than applies in a case in which the reorganization involves the acquisition by the new company of the old company's *assets* with other substantial changes in the corporate structure. The test should not be the 'tax-free' character of the so-called reorganization; any such general test would confuse the issue and give rise occasionally to absurd results in the various types of situations arising under our complex exchange and reorganization provisions. The proper test is whether there is substantial identity of the several corporations and continuity of proprietary interests."

total accumulated earnings of the old companies. If this distribution had "the effect of the distribution of a taxable dividend" within the meaning of paragraph (2) of Section 112(c) it must be treated as in law a distribution to the stockholders of the entire amount of those earnings.

In Love v. Commissioner, 3 Cir., 1940, 113 F.2d 236, this court was called upon to construe Section 203(d) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 150, the precursor of Section 112(c) of the Revenue Act of 1928. We there held that when cash was distributed in a reorganization to the stockholders of the predecessor company that part of the amount thus distributed which equalled the accumulated earnings of the predecessor corporation had the effect of a taxable dividend and was accordingly taxable as such. It is true that in the Love case the cash was paid to the stockholders of the old company directly from the assets of that company, while in the present cases the payments to the old stockholders were made with cash furnished by the New Company. We consider this an immaterial distinction, however. In Commissioner v. Owens, 5 Cir., 1934, 69 F.2d 597, Rose v. Little Inv. Co., 5 Cir., 1936, 86 F.2d 50, and Commissioner v. Forhan R. Corp., 2 Cir., 1935, 75 F.2d 268, the authorities which we cited with approval in the Love case, the payments to the stockholders were in each case made out of moneys supplied by the successor company.

As we have seen, the accumulated earnings of the Old Company amounted to $2,801,117.15. Since cash in the amount of $9,790,062.50 was distributed to the then common stockholders of the Old Company the distribution was a taxable dividend to the full extent of the accumulated earnings. The same is true of the distribution to the stockholders of Mulford. That company had accumulated earnings of $1,748,397.52 and the distribution amounted to $3,709,003.50 in cash. Whether these distributions, to the extent of the accumulated earnings of the old companies, were actually taxed as dividends to the old stockholders does not presently appear. But even if we assume that they were not so taxed by the Commissioner, his error in that regard would not justify us in disregarding the plain mandate of the statute and thus perpetuating the same error here. It may be suggested that the rule of Section 112(c) (2) should not be applied to stamp these distributions as made out of the earnings of the old companies because under the ordinary rules of corporation law and accounting they would not be so treated. The answer to this is that the rule of the Sansome case is equally at war with corporate law and accounting. If it be contended that the one rule calls for the bypassing of corporate forms and procedures and the recognition of a fictional situation, it is clear that the other does also and that if the application of the two rules appear to conflict, the judge-made fiction of the Sansome case must yield to the express statutory fiction of Section 112(c) (2).

It must, therefore, be held that by August, 1929 all the accumulated earnings of the Old Company had been distributed as dividends to its then stockholders and by October, 1929 all the accumulated earnings of Mulford had been distributed to its then stockholders. It follows that when in 1933 and 1934 the New Company made distributions in cash to its stockholders the source of these payments could not have been the accumulated earnings of the Old Company and of Mulford since at that time the earnings of both had long since been distributed. It is conceded that the New Company's own earnings accumulated since its organization in 1929 were not sufficient to cover the entire amount of the distributions made to its stockholders in 1933 and 1934 and which are here in controversy. We conclude that these distributions, to the extent that they did not represent undistributed earnings accumulated by the New Company since its organization, were not made out of the earnings or profits of the New Company within the meaning of the Revenue Acts. It follows that these distributions to the extent indicated were not taxable as dividends.

The judgments of the district court are reversed, and the causes are remanded for further proceedings not inconsistent with this opinion.

JONES, Circuit Judge (dissenting).

I should affirm the judgments of the District Court on the basis of the rule enunciated in Commissioner v. Sansome, 2 Cir., 60 F.2d 931, 933, certiorari denied sub. nom. Sansome v. Burnet, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575, which I think fits the facts disclosed by the record now before us. While the majority of the Court do not reject the ruling of the Sansome case,

they say that its application should not be extended beyond the precise facts of that case. It does not seem to me, however, that any extended application of the Sansome rule is involved where the additional facts, as in the instant cases, do not derogate the rationale of the rule laid down in the Sansome case. That such is the situation seems readily apparent from the facts and decision in that case.

There, a newly organized corporation acquired, in a tax-free reorganization, the entire assets of another corporation, subject to its liabilities, for which the new corporation transferred all of its stock to the stockholders of the predecessor in the same proportional interests as their stockholdings in the old company. The old company was then dissolved. The new company, after operating for slightly more than a year without net earnings, discontinued business and made distribution to its stockholders in ostensible partial liquidation. The Court of Appeals for the Second Circuit, reversing the Board of Tax Appeals, sustained the Commissioner's contention that, to the extent of the surplus and undivided profits of the old company on hand at the time of the reorganization, the later distributions by the successor company to its stockholders in excess of its own earnings constituted ordinary dividends and were taxable as such.

In so deciding, Judge Learned Hand, who spoke for the Court, said (60 F.2d at page 933) that "what was not 'recognized' as a sale or disposition for the purpose of fixing gain or loss [i. e., the reorganization exchange], should [not] be 'recognized' as changing accumulated profits into capital * * *." As it was the intent of Congress, as evidenced by the Revenue Acts, to tax as dividends corporate distributions of earnings accumulated since February 28, 1913, manifestly, to accord such distributions freedom from taxation, when ultimately received by stockholders, merely because of coincidental bookkeeping attendant upon a successor corporation's acquisition of a predecessor's business and assets as the result of a reorganization, would be violative of the congressional intent. It necessarily followed, therefore, as a corollary, that the non-recognition of gain or loss allowed by the reorganization provision there involved (Sec. 202(c) (2) of the Revenue Act of 1921) should, in the words of Judge Hand, "be read as a gloss upon section 201" (the taxable dividend definition of the Revenue Act of 1921). Accordingly, it was held in the Sansome case, 60 F.2d at page 933), as a matter of statutory construction, "that a corporate reorganization which results in no 'gain or loss' under section 202(c) (2) (42 Stat. 230) does not toll the company's life as continued venture under section 201, and that what were 'earnings or profits' of the original, or subsidiary, company remain, for purposes of distribution, 'earnings or profits' of the successor, or parent, in liquidation." The same can be no less true as to a distribution in ordinary course. Sec. 112(b) and (c)(1) of the Revenue Act of 1928 and Sec. 115 of the Revenue Acts of 1932 and 1934 here involved are substantially the same as the cognate provisions of the Revenue Act of 1921 dealt with in the Sansome case.

The suggestion that "its earnings or profits accumulated after February 28, 1913", as employed in Sec. 115(a) in defining taxable dividends, was not meant to include other than the distributing corporation's own separate earnings from the date of its incorporation was sufficiently answered by the Sansome case where the corporation, whose distributions were held taxable as dividends within the meaning of Sec. 201 of the 1921 Act, had no net earnings of its own whatsoever during the entire period of its operations. Speaking directly to the same point, the Court of Appeals for the Fifth Circuit said in Murchison's Estate v. Commissioner, 76 F.2d 641, 642, that "Too much meaning is sought to be attributed to the word 'its'. * * * Unquestionably the profits here involved although earned by the predecessor belong to the new corporation and were in that sense 'its earnings and profits' when distributed, * * *."

The reason underlying the rule of the Sansome case would seem to be that, where the assets of a corporation (or substantially all of them) are acquired by another corporation by merger or consolidation in what amounts under the Revenue Acts to a tax-free reorganization which, incidentally, does not serve to break the continuity of the business enterprise, the relief from taxation enjoyed by virtue of such a transfer implies, as a matter of congressional intent, that the earnings and profits of the transferor companies (accumulated after February 28, 1913) become the earnings and profits of the acquiring company for distributional purposes to stockholders.

The fact that, under approved bookkeeping practices, a successor corporation's acquisition of a predecessor's properties and assets are shown as capital and not as earnings or profits is immaterial to the question of the congressional intent to tax as a dividend a distribution of such part of the apparent capital of the successor corporation as actually reflects earnings and profits of the predecessor corporations accumulated after February 28, 1913.

It so happens that in the Sansome case the old stockholders received through the reorganization nothing but stock in the new corporation for their stock in the old in the same proportional interests while in the instant reorganization the old stockholders received in exchange stock in the new corporation in a reduced proportional interest and cash which was the proceeds of the new corporation's sale of some of its stock to outsiders, the stock thus sold being the cause for the reduction of the old stockholders' proportional stock interest in the new company. It is because of this difference that the majority hold the rule of the Sansome case to be inapplicable. I think the indicated difference is without material legal significance to the pertinency of the rule in the Sansome case. See Crocker v. Commissioner, 29 B.T.A. 773, 777. It is true that, because the exchange was not solely in kind, the old stockholders were taxable on any gain realized to the extent of the cash received in distribution (Sec. 112(c) (1). But, it is also true that that provision established the transaction as an otherwise tax-free reorganization. With respect to this very Sharp & Dohme transaction, the Court of Appeals for the Fourth Circuit held in Starr v. Commissioner, 82 F.2d 964, 966, certiorari denied 298 U.S. 680, 56 S.Ct. 948, 80 L.Ed. 1401, that new Sharp & Dohme, Inc., had acquired all of the properties and assets of the predecessor companies in a permissible reorganization (See Sec. 112(i) (1) from which no gain or loss was to be recognized except for the cash distributed to · the stockholders of the predecessor companies (Sec. 112(c) (1) and, hence, otherwise tax-free. Cf. also Helvering v. Minnesota Tea Co., 296 U.S. 378, 383, 56 S.Ct. 269, 80 L.Ed. 284.

Such being the case, I am unable to see how the congressional intent of similar relevant provisions of the Revenue Acts, as construed in the Sansome case, can be said to vanish where, in a tax-free re-organization, a stockholder receives in exchange, in addition to new stock, some cash (Cf. Helvering v. Minnesota Tea Co., supra, 296 U.S. at page 386, 56 S.Ct. at page 272, 80 L.Ed. 284) on which he is taxable for any gain realized from the cash received, without regard for other possible paper profits. I think the congressional intent of the same provisions of the Revenue Acts remains the same for one tax-free reorganization as for another.

The ruling in the Sansome case has heretofore been uniformly recognized as authority. Save for this Court's decision in the instant cases, the rule of the Sansome case has never been departed from or qualified in any circuit (including our own) in which the question has been passed upon. See Georday Enterprises, Limited, v. Commissioner, 4 Cir., 126 F.2d 384, 389; Corrigan v. Commissioner, 3 Cir., 103 F.2d 1010, certiorari denied 308 U.S. 576, 60 S.Ct. 91, 84 L.Ed. 482, ruled on the authority of Baker v. Commissioner, 2 Cir., 80 F.2d 813, 815, which followed Sansome; Harter v. Helvering, 2 Cir., 79 F.2d 12, 13; Murchison's Estate v. Commissioner, supra, 5 Cir., United States v. Kauffmann, 9 Cir., 62 F.2d 1045, 1047; Barnes v. United States, D.C.E.D.Pa., 22 F.Supp. 282, 283, 284; Crocker v. Commissioner, supra. As Judge Dobie pointed out in the Georday Enterprises case, supra, 126 F.2d at page 389, the principle which the courts thus enunciated and have uniformly followed would seem to have congressional approval as evidenced by the committee reports which he cites.

In reality, the instant reorganization was as complete a distribution among the stockholders of the predecessor companies of the whole capitalization of the new company as it was in the Sansome case. Not one penny of new capital came in to new Sharp & Dohme. The successor company's entire assets, even after its stock sale, consisted solely of the properties and assets transferred to it by the predecessor companies. What happened was that under the contracts for the reorganization, as agreed to by the stockholders of the old companies, the new company was authorized to sell a portion of its stock to the public and to distribute the cash so received among the old stockholders. That, the new company did, making distribution of the proceeds from its stock sale directly to the old stockholders, in the case of Mulford, and indirectly, in the case of old Sharp &

Dohme, through the medium of the old company. In other words, the stockholders of the predecessor companies authorized and obtained a cash conversion of a part of their proportional interest in the assets transferred to the new company. This is by no means to suggest that the integral parts of the reorganization should have been considered separately, contrary to the ruling in Starr v. Commissioner, supra, and that a capital gain should have been determined for the old stockholders from their sale of a portion of their former stock interests. It only goes to confirm that what the old stockholders received in cash in connection with the reorganization bore no relation to the predecessor companies' undistributed earnings. I, therefore, think it is a mistake to say that the cash distribution made to the old stockholders in the reorganization exchange, being in excess of the accumulated earnings and profits of the transferor companies, must be considered to have been a distribution of such earnings and profits.

Incidentally, by so reducing the proportional interest of the old stockholders in the successor company to less than the maximum percentage of control specified in the Revenue Act (Sec. 113(a) (7) of the Act of 1928, 26 U.S.C.A. Int. Rev. Acts, page 382), new Sharp & Dohme was enabled to and did obtain the Commissioner's approval of its step-up of the book values of the assets lately transferred to it by the old companies. Thus, the capitalization of new Sharp & Dohme was arbitrarily augmented and the new company was thereby put in a position to sell a portion of its stock to the public and distribute the proceeds to the stockholders of the predecessor companies without accounting for the stock proceeds as contributed new capital of the new company.

But, the majority, by treating the cash received by the stockholders of the old companies in connection with the reorganization as a distribution of the accumulated earnings and profits of the transferor companies on hand at that time, conclude that the distribution in connection with the reorganization in 1929 was taxable to the stockholders as a dividend under the ruling of this Court in Love v. Commissioner, 3 Cir., 113 F.2d 236, and say that the Commissioner's failure then so to tax can furnish no justification for his claim now that the distributions by the new company to stockholders in 1933 and 1934 were a part of the accumulated earnings and profits of the old companies. I can find no basis in the record for imputing any such oversight to the Commissioner. The complete answer is that in Starr v. Commissioner it was held that the Sharp & Dohme transaction was a tax-free reorganization under Sec. 112(c) (1) and that the old stockholders' tax liability, because of the property other than kind received in the exchange, was limited to the actual gain realized in cash.

If the Love case is to be given the effect which the majority now accords it, then the Sharp & Dohme stockholders have escaped a tax which the taxpayers in the Love case were required to pay, viz., a tax on the reorganization cash distribution as an ordinary dividend to the extent of the old companies' earned surpluses—a tax which the ruling in the Starr case precluded. That case has long since settled the taxability of the cash received by the stockholders of the predecessor corporations in connection with the Sharp & Dohme reorganization. But, we are not now concerned with that distribution. What we are here concerned with are the distributions to stockholders by New Sharp & Dohme, four and five years after the reorganization, in excess of the new company's earnings from the date of its incorporation. In such instance, the new company being the result of a tax-free reorganization, it is my opinion that, under the rule of the Sansome case, the distributions are taxable as dividends to the extent that the earnings of the new company and the undistributed earnings of the old companies at the time of the reorganization were sufficient to cover the subsequent distributions. Such seems to me to be also the clear implication of the decisions in the Baker, Murchison and other cases hereinabove cited.

Even the taxpayers in the instant cases cited the Love case only by way of reply brief in connection with a supposititious set of circumstances contrary to the actual fact. Thus, the taxpayers argue from the Love case (p. 3 of their reply brief) that—"If in that case [Starr v. Commissioner] the Commissioner had taken the position that distribution of the cash to the old stockholders [in the reorganization exchange] was equivalent to a taxable dividend, as he later did successfully in this court in Love v. Commissioner, 3 Cir., 113 F.2d 236 (June 27, 1940), it would seem clear that

as to the cash received, to the extent of the earned surplus of the old company, the old stockholders would have been considered to have received the earnings and profits of the old company as a taxable dividend." The fact is, however, that the Commissioner did *not* take that position in the Starr case and for a very obvious reason. What the stockholders in the Love case had received in distribution they received out of the assets of the old company as shown by its books while what the old Sharp & Dohme and Mulford stockholders received by way of cash distribution in connection with the reorganization was *not* out of the assets of the old companies as shown by their books. Neither was it out of the assets of the new company as already appears. The latter material circumstance would seem to distinguish the instant case from the cases cited and relied upon in Love to which the majority again make reference.

I, therefore, continue to believe that the decision in the Sansome case furnishes the rule dispositive of the question here involved.