## MUNTER v. COMMISSIONER OF INTERNAL REVENUE (two cases).

### Nos. 9010, 9011.

Circuit Court of Appeals, Third Circuit.
Argued Nov. 20, 1945.
Decided Aug. 7, 1946.

Writ of Certiorari Granted Dec. 16, 1946.
See 67 S.Ct. 369.

O'CONNELL, Circuit Judge, dissenting.

Samuel Kaufman, of Pittsburgh, Pa. (David Glick, of Pittsburgh, Pa., on the brief), for petitioners.

Helen Goodner, Sp. Asst. Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, McLAUGHLIN and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

On March 21, 1940 the petitioners each purchased from O. McKenzie 10,000 shares of the common stock of Crandall-McKenzie & Henderson, Inc., a Pennsylvania corporation, paying therefor $8.00 per share. The total outstanding capital stock of the corporation at the time was 38,922 shares, exclusive of 11,078 shares of treasury stock. On June 19, 1940 the corporation distributed to its common stockholders cash in the amount of $35,166.25 at the rate of $1.25 a share of which each petitioner received $12,500 with respect to the 10,000 shares held by him. These sums were held by the Commissioner to be taxable to the petitioners as an ordinary dividend. The Tax Court sustained the Commissioner.

In 1928, under an agreement with investment bankers, two corporations, Crandall-McKenzie Co. and L. Henderson & Sons, Inc., were reorganized into the above mentioned Crandall-McKenzie & Henderson, Inc. At the end of the process, old company stockholders held 45% of the stock of the new corporation. Over half of the 50,000 shares issued were purchased by new investors for approximately $486,893.92. The stockholders of Crandall-McKen-

zie Co. received 14,607 shares and $355,-247.75 for the shares (par value $10) and upon dissolution, the assets of that concern.[1] The shares and assets of L. Henderson & Sons, Inc. were acquired solely for 9,524 shares of the new corporation. At the time, Crandall-McKenzie Co. had earnings and profits accumulated subsequent to March 1, 1913 of $329,267.95 and L. Henderson & Sons, Inc. had similar earnings and profits of $74,743.62, making a total of $404,011.-57 earnings and profits taken over by the successor corporation.[2] From the date of reorganization until the end of 1939, the new company had aggregate earnings and profits of $401,470.07. During that period it made cash distributions of $369,452.30 to shareholders and liquidated or purchased 11,078 of its own ($1 par value) stock for $72,211.13 cash. In 1940 it had a net loss of $37,252.47 and liquidated or purchased 12,805 shares of its own stock for $94,441.-90 in cash.[3] Also in 1940 it made the distribution on which the tax in question was levied.

We agree with the Tax Court that the acquisition of all of the assets of the two old companies by Crandall-McKenzie & Henderson, Inc. constituted a reorganization under Section 112(i) (1) (A) of the applicable Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 379. Petitioners' argument though not so conceding assumes this to be so.

The Tax Court held that the earnings and profits of the two old corporations amounting to $404,011.57 were taken over by the successor company. From this it concluded that the latter had sufficient earnings to cover its 1940 distribution which therefore was an ordinary dividend as to petitioners and taxable as such. In so doing it relied chiefly upon Commissioner v. Sansome, 2 Cir., 60 F.2d 931, certiorari denied, Sansome v. Burnet, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575. In that case the stock of a new corporation was exchanged for the assets of its predecessor without change in proportion of stockholdings and no other change in the financial structure. The Court decided that in such situation the earnings and profits of the old corporation were later so taxable upon distribution to the successor company in the form of dividends. That rule is now well settled tax law.[4] It was discussed at length by Judge Maris for this Court in Campbell v. United States, 3 Cir., 144 F.2d 177. There the plaintiff and other stockholders who paid cash for their shares came into the corporate setup as a result of the reorganization, and the proportionate ownership of the stockholders of the two old companies in the successor corporation was reduced to a fraction of their interests in the former companies. In stating the first of the two reasons which distinguish the Campbell

---

[1] This transaction was in itself a series of purchases and exchanges between various stockholders. One of the leading old holders, apparently unfavorable to the plan, had to be bought out by another holder, O. McKenzie. The first sold 842½ old shares to McKenzie for $300,-000. The new company then bought them for the same price and gave McKenzie 12,181 shares for 842½ shares of his own old stock.

[2] No purpose would be served by attempting to treat these sums separately. The circumstances that no cash was given in return for the L. Henderson profits does not justify such separate treatment, especially since Section 112 (c) of the Revenue Act of 1928, involved in the holding below, does not enter into our decision. When and if these sums were paid out later as dividends their detailed source would be immaterial. Section 115 (b), I.R.C., 26 U.S.C.A. Int.Rev.Code, §

115 (b); Helen v. Crocker, 29 B.T.A. 777. The reorganization being a single transaction (Starr v. Commissioner, 4 Cir., 82 F.2d 964), only the total earnings and profits arrived at upon its conclusion appears pertinent.

[3] The Tax Court did not determine whether the sums expended in liquidating purchases should be subtracted from accumulated earnings and profits. This was unnecessary to the decision below and is not important to the result arrived at here.

[4] Corrigan v. Commissioner, 3 Cir., 103 F.2d 1010, certiorari denied, 308 U.S. 576, 60 S.Ct. 91, 84 L.Ed. 482, decided on the authority of Baker v. Commissioner, 2 Cir., 80 F.2d 813; Georday Enterprises v. Commissioner, 4 Cir., 126 F.2d 384; Murchisons Estate v. Commissioner, 5 Cir., 76 F.2d 641, 643; United States v. Kaufman, 9 Cir., 62 F.2d 1045.

134

facts from Sansome v. Commissioner[5] Judge Maris said at page 180 of 144 F.2d: "The identity of proprietary interest which existed in the Sansome case and motivated the court to disregard the corporate entities and treat the earnings of the predecessor corporation as though they were earnings of the successor corporation is, therefore, completely lacking. We think that for this reason alone the doctrine of the Sansome case, which by judicial construction operates to transfer earnings from the corporation which earned them to its successor in reorganization, is inapplicable."

On the same point with reference to the extension of the Sansome rule the Court further said: "We are aware that it has also been applied to transfers of corporate assets which, while constituting tax-free reorganizations within the meaning of the revenue act, none the less involved the introduction of new capital and new stockholders into the corporate picture with consequent changes in the proportionate interests of the old stockholders in the enterprise. We cannot accede to such an extension of the Sansome doctrine, however, because it involves the contradictory concept of a corporation buying profits with money contributed by new stockholders, whereas profits by their nature must be realized from other transactions and may not themselves be acquired by purchase."

In the present matter new interests having no connection with the predecessor companies paid at least $486,893.92 cash for over 50% of the capital stock of Crandall-McKenzie & Henderson, Inc. Of that sum, $355,247.75 was paid in addition to stock, for the old Crandall McKenzie assets. The earnings of that concern amounted to $329,-267.95. The L. Henderson & Sons, Inc. earnings totaled $74,743.62. As seen the new corporation not only differed radically from its two predecessors but actually paid out in cash to one of them more than the latter's earnings and profits though less than the combined earnings and profits of both old corporations. The Tax Court recognizes that the facts are directly within the first branch of the Campbell decision but contends for the general application of the Sansome principle. It cites Helen v. Crocker, 29 B.T.A. 773, but in that matter the new corporation seems to have exchanged its stock substantially share for share with that of its predecessor corporations. The only other cases cited where the successor company is said to have new stockholders are Putnam v. United States, 1 Cir., 149 F.2d 721 and Reed Drug Co. v. Commissioner, 6 Cir., 130 F.2d 288. Both of these are readily distinguishable from the instant problem. In Putnam the acquiring corporation was already established, there was no cash involved in the obtaining of the stock, and the "proportionate proprietary interest" of the owners of the corporation and partnership taken over was "maintained." In Reed the new company was formed to absorb the old concern and several other corporations in the same business. The old corporation exchanged its assets for stock in the new, there was no cash in the transaction nor does it appear that the proportionate proprietary interest of the old company stockholders was disturbed.

■ We think this reorganization is entitled to be judged on its own particular facts. In none of the decisions extending the Sansome doctrine do we find the situation that appears in Campbell v. United States and in the pending issue. The Campbell opinion is still the law of this Circuit. It controls the question under consideration. The finding below is directly contrary to it and therefore must be reversed.

[5] Since this case is squarely under the first exception in Campbell it is sufficient for the purposes of this opinion simply to state the second exception as set out in the Campbell opinion, page 181 of 144 F.2d: "The doctrine of the Sansome case that the accumulated earnings of the predecessor corporation in a tax-free reorganization shall be deemed carried over to the successor corporation for the purpose of distribution to its stockholders as dividends cannot apply to a situation where the accumulated earnings of the predecessor corporation have been distributed to its stockholders at the time of the reorganization. Obviously earnings cannot at one and the same time be distributed to the stockholders of the predecessor corporation and transferred to the successor corporation."

O'CONNELL, Circuit Judge (dissenting).

I cannot concur in the conclusions reached by the majority. Since a reversal of the Tax Court's rulings is placed squarely on Campbell v. United States, 3 Cir., 1944, 144 F.2d 177, consideration of that case is required.

As I understand the Campbell case, this court, per Judge Maris, found two reasons why the undistributed earnings of a corporation were not transferred over for tax purposes to a successor corporation in a tax-free reorganization. The first was that "The identity of proprietary interests which existed in the Sansome case" was lacking in the Campbell reorganization. The second was "the accumulated earnings of the predecessor corporation have been distributed to its stockholders at the time of the reorganization." Campbell v. United States, supra, 144 F.2d at pages 180, 181. There were thus alternative bases for the Campbell ruling.

Acquiescing in principle in the second basis for that decision, I am compelled to disagree with the first, if it was meant to be laid down as a criterion to be applied in other cases. Stripping aside the language necessary for the solution of the perplexing problem of statutory construction in the Sansome case, I believe that the real basis for that ruling is the prevention of tax evasion. See Putnam v. United States, 1 Cir., 1945, 149 F.2d 721, 726. By judicial interpretation, later sanctioned by Congress (see S.Rep.No.2156, 74th Cong.2d Session, p. 19, 1939-1 Cum.Bull., Part 2, 678–690), the general rule has evolved that where one corporation acquires all the assets and assumes all the existing obligations of another corporation in a tax-free reorganization, the undistributed earned surplus of the transferor becomes the undistributed earned surplus of the transferee and is subject to taxation as a dividend on subsequent distribution to the stockholders of the transferee. The factor of vital importance in the application of this general rule is the distribution of earned corporate surplus which had not previously been distributed. Such earnings do not disappear, and the rule of Sansome which has been "adopted in this circuit and has been followed in every circuit in which the question has been determined," Campbell v. United States, supra, 144 F.2d at page 179, has laid to rest the question of capitalization of accumulated earnings through the device of reorganization. Identity of the distributee is no more material than identity of the distributor. Any distribution made by a corporation to its shareholders out of its earnings and profits accumulated after February 28, 1913, is a dividend. Section 115(a), Internal Revenue Code.[1] Gross income includes income from dividends. Section 22(a), Internal Revenue Code.[2] We have long since passed the stage where taxability of dividends distributed to those who became shareholders after the corporate earnings or profits came into existence is even questioned. See United States v. Phellis, 1921, 257 U.S. 156, 171, 172, 42 S.Ct. 63, 66 L.Ed. 180; Taft v. Bowers, 1929, 278 U.S. 470, 484, 49 S.Ct. 199, 73 L.Ed. 460, 64 A.L.R. 362. Thus, that the profits had already been earned when petitioners purchased their shares in 1940 is immaterial. Cf. Commissioner v. Sansome, 2 Cir., 60 F.2d 931, 932. "Under the Sansome rule, earnings or profits which pass to a successor company are taxable as dividends on subsequent distribution. It does not matter who received them". Putnam v. United States, supra, 149 F.2d at page 727.

In my view this case narrows down to this: Two companies (one will be referred to herein as "Crandall" and the other as "Henderson") are reorganized into a third (called the "New Corporation" herein), with the reorganization resulting in a possibly recognizable distribution of Crandall's earnings but with no distribution whatsoever of Henderson's earnings. None of the $355,247.75 in cash which passed in this transaction came out of Henderson's earnings. Indeed, the Tax Court found that all of the assets of Henderson were acquired by the New Corporation solely in exchange for 9,524 shares of its stock. The Tax Court also found that at the time of this acquisition, Henderson had earnings and profits of $74,743.62 accumulated subsequent to March 1, 1913.

---

[1] 26 U.S.C.A. Int.Rev.Code, § 115 (a).

[2] 26 U.S.C.A. Int.Rev.Code, § 22(a).

On March 21, 1940, the petitioners purchased their shares in the New Corporation. On June 19, 1940, the New Corporation distributed to its common shareholders cash in the amount of $35,166.25, of which petitioners received $25,000 between them. Whether the accumulated earnings (without regard to the earnings of Crandall, but including the earnings of Henderson), considering the Treasury Stock purchased and held and the possibility of loss up to June 1940 (the company's loss for the year 1940 was $37,252.47), were sufficient to cover such distribution is for determination by the trier of the facts. If so found, it follows that what the petitioners received was dividends in accordance with the Sansome doctrine. Cf. Campbell v. United States, supra, Judge Jones' dissent, 144 F.2d at p. 184.

Accordingly, I should reverse and remand to the Tax Court for such determination.